(100 South. 694)

No. 26477.

## MYEVRE v. LIBERTY REALTY & SECURITIES CO., Inc., et al.

(April 21, 1924. Rehearing Denied by Whole Court June 7, 1924.)

*(Syllabus by Editorial Staff.)*

1. Contracts ⬅333(7)—Exception of nonjoinder and misjoinder of parties defendant held properly overruled.

Where allegations of petition in action for breach of building contract and attached letters showed defendant well knew it was dealing with plaintiff, rather than with homestead association, which merely acted in the transaction as representative of and for account of plaintiff, exceptions of nonjoinder and misjoinder, based on fact that homestead association was not made a party, *held* properly overruled.

**2. Pleading** ⊚⟶18—**Petition in action for breach of contract held not subject to exception for vagueness.**

Failure of petition in action for breach of building contract to allege date plaintiff went into possession or acquired ownership *held* not to render it subject to exception for vagueness and indefiniteness.

**3. Specific performance** ⊚⟶80—**Courts will not enforce or require specific performance of contract precluding resort to courts.**

Courts will not compel persons to appoint arbitrators nor otherwise enforce agreements whereby persons undertake with regard to future matters to close the doors of the courts against themselves, and clause of contract requiring arbitration of differences is not susceptible of specific enforcement.

**4. Contracts** ⊚⟶198(2)—**"Building site" held to include entire lot and not merely ground on which building stood.**

Building contract, providing for filling of building site to grade, *held* to contemplate entire lot, and not that limited spot on which building erected.

**5. Contracts** ⊚⟶175(3)—**Evidence held to show building contractor knew contract was made for benefit of plaintiff.**

Evidence, consisting of correspondence, *held* to show building contractors knew they were dealing with plaintiff rather than with homestead association, which in fact acted only as her representative.

**6. Costs** ⊚⟶234 — **Appellant held liable for costs, notwithstanding reduction in amount of judgment for appellee.**

Building contractors *held* liable for all costs in action for breach of contract and demurrage for delay in completion, notwithstanding the judgment recovered against it in the lower court was excessive and was reduced on its appeal.

Appeal from Civil District Court, Parish of Orleans; Sam A. Le Blanc, Judge.

Action by Mrs. Marie Myevre against the Liberty Realty & Securities Company, Inc., and others. Judgment for plaintiff, and defendants appeal. Judgment amended, and, as amended, affirmed.

F. Rivers Richardson, of New Orleans, for appellants.

Woodville & Woodville, of New Orleans, for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. This is a suit for damages growing out of the alleged breach of a building contract entered into between defendant Liberty Realty & Securities Company, Inc., and the Acme Homestead Association, with the New Amsterdam Casualty Company, of New York, as surety.

Plaintiff alleges that the Homestead Company, in making said contract, was in reality acting in her behalf and for her account, to the knowledge of defendant, Liberty Realty & Securities Company, Inc., as shown by certain correspondence attached to her petition as part.

The suit is for $472, which plaintiff avers she will be compelled to expend in order to complete the building contracted for, and for an additional sum of $5 a day demurrage from October 1, 1921, until the "final settlement of the cause or the completion of the work."

The surety company was made a party defendant, but was dismissed on an exception.

The Liberty Realty & Securities Company, Inc., hereinafter referred to as defendant, filed numerous exceptions, which were overruled. Defendant then filed its answer, setting forth that its contract was with the Homestead Association alone, and that the letters made the basis of plaintiff's claim were only written her because it was known that the house was to be eventually transferred to her. Defendant averred that it had completed the house in accordance with its contract, and that said house was accepted by the Homestead Association; that plaintiff moved into said house on or about September 30, 1921, and has ever since been in the full enjoyment thereof, and "being in such possession and use, she is without right to demand smart money for alleged incomple-

tion of trivial details." Many of the grounds urged in support of the exceptions were also incorporated in the answer.

The case was submitted to a jury, who returned a verdict for the plaintiff of $921 and costs. Judgment was entered in accordance therewith, and defendant appealed. Plaintiff answered the appeal, praying for an increase of the judgment up to $2,500.

We think defendant's exceptions were correctly overruled. They are: (1) Want of jurisdiction ratione materiæ; (2) nonjoinder of parties defendant; (3) misjoinder of parties defendant; (4) vagueness and indefiniteness; (5) prematurity of action; and (6) no right or cause of action.

[1, 2] The exceptions of want of jurisdiction, prematurity, and of no right or cause of action, in the main, are leveled at the failure of the petition to show an unavailing demand for the arbitration of the differences between the parties as provided for in the contract. The exceptions of nonjoinder and misjoinder are based on the fact that the Acme Homestead Association was not made a party to the suit. The exception of vagueness is directed at the failure of the petition to set forth when plaintiff went into possession, or when she acquired the ownership, of the property. The exception of no right or cause of action, besides the failure to aver arbitration, is based upon the ground that demurrage is due the Homestead Association only; that plaintiff does not show she paid out the amounts claimed; that the only action against defendant is to replace defective parts and not for the value thereof; and that putting in default is not averred.

[3] The clause of the contract providing for arbitration was dependent for its execution wholly upon the will of the parties; it was not susceptible of specific enforcement. Courts will not compel persons to appoint arbitrators, nor will they otherwise enforce agreements whereby persons undertake, with regard to matters to arise in the future, to close the doors of the courts against themselves. Saint v. Martel, 127 La. at page 98, 53 South. 432, and authorities there cited.

The allegations of the petition and the letters of defendant attached thereto as part clearly show that the Homestead Association was merely acting in the transaction as the representative and for the account of plaintiff, and that defendant well knew and recognized this fact and dealt with plaintiff accordingly. There was, therefore, no necessity of impleading the Homestead Association. There is no merit in the exception of vagueness, nor in the contention that the demurrage was due the Homestead Association alone; that plaintiff could not recover for the value of the defective work; and that putting in default was not averred.

In the correspondence attached to the petition defendant, over its own signature, admits that plaintiff took possession of the property, with reservation of her rights for the noncompletion of the work; admits that the contract was in reality with plaintiff and not with the Homestead Association; and admits that defendant was in default in not completing the work at the date agreed on.

Considering the case on the merits, we are not informed upon what basis the jury acted in finding its verdict for plaintiff in the sum of $921. There is nothing in the record to guide us in respect thereof. While we are of the opinion that plaintiff is entitled to a recovery, we think the amount awarded her is excessive.

The testimony in many respects is conflicting; in all respects is confusing, and consists, in large part, of general statements concerning the defects in the work, the dates on which they were remedied, and what was finally left uncompleted.

It is clear, however, that the work was not finished on or before October 1, 1921, as provided in the contract. This is shown

by defendant's letters of September 29, 1921, and of October 4, 1921. Plaintiff was permitted to move into the building on October 1, 1921, with full reservation of her rights concerning the acceptance of the house and the obligation on the part of the defendant "to continue the work to complete the house as quickly as practicable, in other words, to rush the work and keep as·many men on the job as possible until the house is completed to your satisfaction."

In order to permit the occupancy of the building by plaintiff and her family, two of the rooms thereof were hastily rendered habitable. At the time plaintiff took possession of these rooms, the bathroom, in particular, was incomplete, there was no toilet, bath tub nor lavatory installed therein. This work was not done for about ten days or two weeks thereafter. There was also other work performed in the way of plastering, painting, repairing leaks, and chimneys, in completing the kitchen, fixing drain pipes, placing filling under the house, and in removing rubbish. In consequence of this situation, plaintiff and her family suffered great inconvenience and much discomfort. It is not definitely shown how long this condition endured. Mr. Edmiston, the secretary-treasurer of the defendant company, fixes November 1, 1921, as the date on which the major portion of the work was completed and plaintiff was enabled to take possession of the whole house. This testimony is not seriously controverted by plaintiff, and we think said date may be fairly accepted as the end of the demurrage period. It is true some defects of a minor character were remedied thereafter, but plaintiff's occupancy of the premises was not thereby greatly interfered with.

In so far as the defects complained of by plaintiff are concerned, we think the evidence shows that they. were all substantially corrected with the exception of the smoking chimney and the filling of the lot. We think the chimney was faultily constructed; that it will never be serviceable, and must be rebuilt. Plaintiff has claimed $50 on account of the chimney. The reasonableness of this amount is established by the testimony.

[4] The contract provides for filling the building site to grade. Defendant claims that under this provision it was only required to place filling under the actual building. Plaintiff, on the other hand, claims that the entire lot should have been filled. Defendant filled under the house but not the lot. We think the "building site" comprehended the lot, and that plaintiff is entitled to recover the amount necessary to complete said filling. The amount of $50 claimed for this purpose by plaintiff is reasonable.

[5] Defendant has renewed in its answer the point made in its exceptions that the plaintiff was not entitled to sue for damages because she was not a party to the contract which was made with the Acme Homestead Association. Again disposing of this contention, we find that by its own letters defendant recognized plaintiff to be the real party in interest in the contract. The opening paragraph of defendant's letter of September 29, 1921, is as follows:

"Referring to the house *which we are erecting through the Acme Homestead for your account* at No. 5805 West End Boulevard, and which *you propose to occupy* on October 1st, and which all parties recognize as incomplete." (Writer's italics.)

And the first and second paragraphs of defendant's letter of October 4, 1921, read:

"Referring to your conversation with our Mr. Hughes, relative to *your accepting building* erected by us *through the Acme Homestead.*

"This is to advise you that your acceptance of the building will in no wise effect (sic) *our original contract with you,* regarding the completion of said building. * * *" (Writer's italics.)

The evidence shows that plaintiff went to the office of the defendant to arrange for the construction of the house. That defend-

ant required plaintiff to place in its hands $500 in Liberty bonds and $60 in cash, which was done; that, at the same time defendant had plaintiff sign an application to the Homestead Association, which application was filed by defendant itself with said Association; that the plans and specifications were prepared by defendant, who made all arrangements for the signing of the contract and the handling of the transaction by the Homestead Association.

[6] It is our conclusion that plaintiff is entitled to $5 per day demurrage from and including October 1, 1921, to November 1, 1921, a period of 31 days, or a total demurrage of $155, and that she is likewise entitled to an allowance of $50 for the defective chimney and $50 for the insufficient filling of the lot, or a total amount of $255 which she should recover. Under the circumstances of the case we think defendant should also pay the costs of these proceedings.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment herein appealed from be amended by reducing the amount of the judgment in favor of plaintiff and against defendant from $921 to $255, and that as thus amended said judgment be affirmed, at the cost of defendant and appellant.

Rehearing denied by the WHOLE COURT.