It is further ordered that a writ of prohibition also issue to Hon. Hugh C. Cage, respondent judge, directing him to take no further proceeding in this case on "The Summary Docket" of said court.

**143 So. 500**

## OFFICER v. AMERICAN EAGLE FIRE INS. CO.

No. 31815.

July 20, 1932.

Rehearing Denied Oct. 4, 1932.

582

Hardin & Coleman, of Shreveport, for American Eagle Fire Ins. Co.

Thompson & Ferguson, of Leesville, for Mrs. Lucy Ferguson.

Woosley & Cavanaugh, of Leesville, for Henry R. Officer.

ODOM, J.

An automobile owned by **P. L.** Ferguson was insured against loss by fire in the defendant insurance company, and was burned during the life of the policy. The insurance company admitted liability but a dispute arose between it and Ferguson, the assured, as to the amount of loss or damage sustained.

The insurance policy is standard in form and contains the following clause:

"In case the assured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand

of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen (15) days to agree upon such umpire, then, on the request of the assured or this company, such umpire shall be selected by a judge of the Court of record in the county and state in which the appraisal is pending. The appraisers shall then appraise the loss and damage stating separately sound value and loss or damage; and failing to agree, shall submit their differences only to the umpire, an award in writing of any two, when filed with this company, shall determine the amount of sound value and loss or damage."

An appraisal of the amount of loss and damage was made in writing by appraisers appointed by the assured and the insurer, and was forwarded to the insurance company. The appraisers fixed the sound value of the property destroyed at $200. The policy provides that the maximum liability under it should not exceed three-fourths of the value of the property destroyed, and the insurance company admits liability in the sum of $150, which amount it tendered.

At the time the automobile was insured, it was under mortgage held by Dr. H. R. Officer, and there was written into the policy the following loss payable clause: "Subject to all the provisions, exclusions, conditions and warranties contained in this policy, loss, if any, payable as interest may appear, to the assured and Dr. H. R. Officer."

The balance due Dr. Officer, the mortgagee at the time of the loss, was $511.20. He brought suit for that amount against the succession representative of the assured (the as-

sured having died) and the insurance company, his contention being that he is not bound by the award made by the appraisers because he had no part therein, was not notified that an appraisal was to be made, and was not given an opportunity to appoint an appraiser.

The insurance company contends that all parties, it, the assured, and the mortgagee, are bound by the award made by the appraisers; that the sound value of the property destroyed as fixed by them must be accepted by all parties as the basis for the settlement.

The trial judge held that neither the assured nor the mortgagee was bound by the award and disregarded it. There was judgment against the insurance company for a larger amount, and the case was carried to the Court of Appeal for the First Circuit by the insurance company, and it was held by that court that:

"Under the agreement in the chattel mortgage, as well as in the policy, Dr. Officer was, for all practical purposes, made the assured. He was not consulted on the subject of an appraisement by either the insurance company or Ferguson [the assured]; he was not notified that one was to be made, nor given an opportunity to name an appraiser nor made a party to the appraisement. Mr. Ferguson, at the time of the loss, did not have any except a contingent and possible residuary interest in the policy. He did not represent Dr. Officer nor have any power or authority, from him to enter into an appraisal agreement. * * * This insurance company, aware that its policy was payable as above stated, took no steps to effect a settlement contradictorily with

Dr. Officer. The appraisement in question is not binding on him."

The insurance company applied for writs which were granted, and the case is now before us on the sole questions whether Dr. Officer, mortgagee, and the succession representative of the assured are bound by the award made by the appraisers.

1. The facts pertinent to the issue here involved are that Mr. Ferguson purchased an automobile from Copeland's Garage for $1,692, of which amount $925 was paid in cash, and the balance of the price was represented by one principal note for $767, secured by vendor's privilege and chattel mortgage on the car. The note and the mortgage provided that the purchaser should pay the balance in monthly installments of $42.60.

The chattel mortgage contained the following stipulation with reference to insurance on the car:

"Vendor may insure said property against fire and theft to properly protect purchaser, seller and seller's assignee. Purchaser agrees to pay the premium upon demand and that on failure to do so, payment of said premium shall be secured by this mortgage.—The proceeds of any insurance, whether paid by reason of loss, injury return premium or otherwise, shall be applied toward the replacement of the property or payment of this obligation, at the option of the vendor."

This is the stipulation in the chattel mortgage referred to in the opinion of the Court of Appeal. It does not appear that the vendor had the car insured as it might have done under the above clause of the chattel mortgage. But Ferguson, the purchaser, had it insured in his name against loss by fire and theft in the sum of $1,150, with loss, if any, "payable as interest may appear to Assured and Dr. H. R. Officer." Mention is made in the policy of the balance due thereon amounting to $767, payable in monthly installments of $42.60. The following clause is found in the policy:

"This policy shall be void in event of violation by the assured of any agreement, condition or warranty contained herein or in any rider now or hereafter attached hereto."

The policy nowhere mentions the interest of the mortgagee, nor is there any stipulation therein for his protection. On the contrary, it provides that the policy may be canceled at any time upon request of the assured, and further that:

"This policy may be canceled at any time by the company by giving to the assured five (5) days written notice of cancellation with or without tender of the excess of paid premium above the prorata premium for the expired time, which excess, if not tendered, shall be refunded on demand."

The policy does not provide that the mortgagee shall be consulted or notified as to any change made which might affect the obligation of the insurer or the rights of the assured. It is provided that the policy shall become void if the assured should use the property for purposes other than those stated therein or if his ownership therein should at any time become divested by any process whatever, and this without notice to the mortgagee. It is provided also that, in case of loss or damage to the property during the life of the policy, the amount of such loss or damage, in case of a dispute between the assured and the insurer, shall be determined by two

appraisers, one appointed by the assured and the other by the insurer, and, if the two cannot agree, an umpire shall be named by the two appraisers, and that:

"An award in writing of any two, when filed with this company, shall determine the amount of sound value and loss or damage."

This policy throughout shows that it was intended to evidence a contract between the insurer and the assured, and not one between the insurer and the mortgagee. The mortgagee was not intended to be and was not made a party to it. He was designated as the payee of a part but not all the proceeds thereof in case of loss or damage. The insurance was made payable to him only as his interest might appear. His interest in the policy was not commensurate with the amount of the insurance which exceeded by far the amount originally due him. The contract between the vendor of the car and the purchaser provided that the balance due should be paid in monthly installments, so that the balance due the mortgagee at the time of loss or damage to the property necessarily depended upon the amounts paid by the mortgagor. In other words, the pro rata amount of the proceeds of the loss, if any, was not definitely fixed but was purely contingent, "as interest might appear."

This policy was in no sense a contract between the insurer and the mortgagee. The assured owned the property covered and controlled it. He consented that in case of loss or damage to his property by fire a portion of the proceeds of the policy should be paid by the insurer to the mortgagee, as his interest might appear. This provision in the policy did not constitute the mortgagee "virtually

the assured," as was held by the Court of Appeal.

2. The clause in this policy making the proceeds, if any, payable to the mortgagee, as his interest might appear, is what is generally referred to as an ordinary or open mortgage payable clause, under which the assured mortgagor remains the responsible party, or party in interest, to control the insurance and the adjustment of the loss. Under policies containing such a clause, the contract remains one exclusively between the insurer and the property owner. The mortgagee is only a conditional appointee of the mortgagor to receive part of the proceeds in case of loss. As such conditional appointee, the mortgagee was entitled to receive so much of any sum that might become due under the policy as did not exceed his interest as mortgagee, and no more.

3. In the case of Atlas Reduction Company v. New Zealand Ins. Co., 138 F. 497, 505, 71 C. C. A. 21, 9 L. R. A. (N. S.) 433, Justice Van Devanter, then a member of the Circuit Court of Appeals, Eighth Circuit, in discussing the purpose and effect of the ordinary loss payable clause in an insurance policy, said:

"The purpose and effect of loss payable indorsements upon policies of insurance have frequently been considered in the courts, and, in the absence of some provision, to the contrary, it has been quite uniformly held that such an indorsement is a mere appointment of a payee to receive payment of the insured's loss, and does not create a new contract of insurance with the payee, or abrogate or waive any condition of the policy."

The general rule is stated in 14 R. C. L. § 534, p. 1365, as follows:

"Under the ordinary loss payable clause, a mortgagee is bound by an award, though he was not notified of and did not take part in the appraisal according to the better view, especially where he is not entitled to the whole insurance, but some courts hold that in such a case the mortgagee is entitled to be a party to the proceedings. The former view is extended. and applied even though the policy contains a union mortgage clause. Where a policy has been assigned, to the knowledge of the insurer, an adjustment between it and the insured is not binding on the assignee unless the assignor acted as his agent."

In Chandos, Adm'r, v. American Fire Insurance Co., 84 Wis. 184, 54 N. W. 390, 19 L. R. A. 321 it was held that: "A mortgagee to whom insurance is made payable as his interest may appear, but who is not entitled to the whole insurance, need not be made a party to or given notice of an appraisement of damages to the property insured."

In Collinsville Savings Society v. Boston Insurance Co., 77 Conn. 676, 60 A. 647, 69 L. R. A. 924 it was held that: "An open mortgage clause attached to a policy of fire insurance, which merely provides that loss, if any, shall be paid to a mortgagee as his interest may appear, does not create any contract relations between the mortgagee and insurer, or give the mortgagee a right to participate in arbitration proceedings to fix the amount of loss; and, therefore, he will be bound by the award, although he was given no opportunity to be heard."

In Erie Brewing Co. v. Ohio Farmers' Ins. Co., 81 Ohio St. 1, 89 N. E. 1065, 25 L. R. A. (N. S.) 740, 135 Am. St. Rep. 735, 18 Ann. Cas. 265, the Supreme Court of Ohio held that a mortgage clause attached to a fire insurance policy making the loss, if any, under the policy, payable to the mortgagee as his interest may appear, "is not an assignment of the policy to such mortgagee, and, in the absence of fraud or collusion, he is bound by the award of appraisers provided for and required by the terms of the policy in the event of a disagreement between the insured and the insurance company as to the amount of the loss, although the mortgagee was not a party to, and had no notice of, the appraisement and award."

4. It is suggested that the courts are divided in their holdings as to the effect of the open mortgage payable clause in fire insurance policies in so far as the rights and privileges of the mortgagee in making adjustments of the loss are concerned. But our reading of the reported cases has convinced us that there is in fact no division at all, and that there is no dissent from the rule announced in the above cases and in the text found in Ruling Case Law, as cited above. A casual, surface reading of some of the cases may indicate that the courts are divided; but a careful reading of these cases ordinarily cited in support of the contrary view will show that the policy itself and the clause inserted therein which the courts had under consideration were altogether different from those considered in the above-cited cases and the one which is now before us.

In some fire policies there is embraced a provision that no act or default of any person other than the mortgagee or his agent or those claiming under him shall affect the rights of the mortgagee to recover, and it is generally held that the effect of this clause

when made a part of or indorsed on the policy is "to bring the insurer and the mortgagee into relations of privity, to convert the mortgagee into a party to the contract of insurance, to give to the mortgagee separate and distinct protection to his interest, to create in him an interest under the policy distinct from that of the property owner and to in fact make him the assured."

The loss clause inserted in such policies is generally referred to as the "union mortgage clause." The distinction between the "union mortgage clause" and the ordinary or open mortgage clause is discussed in the case of Collinsville Savings Society v. Boston Ins. Co., supra, from which the above is quoted.

In a case note found in 25 L. R. A. (N. S.) 740, where the Erie Case is reported, it is stated that the authorities are "unanimous in holding that a union mortgage clause in a policy of insurance operates as a separate and independent insurance of the mortgagee's interest."

In some of the cases it was found that the policies contained a provision making the entire proceeds, in case of loss or damage, payable to the mortgagee. In all such cases it is held that such a loss payable clause operates as a complete and unconditional assignment of the policy by the assured to the mortgagee. In other cases it was found that the entire amount of the insurance carried was less than the amount shown in the policies to be due the mortgagee and in some that the insurance was carried solely for the protection of the holders of the mortgage.

In all such cases it is held that no adjustment of the loss made between the owner of the property and the insurer is binding upon the mortgagee. · This is upon the theory that in such cases the mortgagee is a party to the contract or that there was an assignment of the policy.

5. Counsel for Dr. Officer, the mortgagee, cite the case of First National Bank of Duluth v. National Liberty Ins. Co. of America, 156 Minn. 1, 194 N. W. 6, 7, 38 A. L. R. 380, where it was held that an adjustment of the loss made by appraisers appointed by the assured and the insurance company according to the terms of the policy was not binding upon the mortgagee. After citing a long list of authorities in support of its conclusions, the court said: "This seems to us so palpably right that discussion is unnecessary, and we hold that the mortgagee has, *under such a clause in the policy*, the legal right to participate in an adjustment of the loss." (Italics the writer's.)

It will be noted that the court said that "under such a clause in the policy" the mortgagee was entitled to participate in the adjustment. The clause in the policy referred to made the "loss if any payable to the mortgagee," which, under all the decisions, amounts to an unqualified assignment of the policy. The holding in this case is concisely stated in the syllabus as follows:

"Where a policy makes the loss, if any, payable to the mortgagee the mortgagee is not bound by an adjustment between the insurance company and the mortgagor."

In support of its conclusions, the court cited Harrington v. Ins. Co., 124 Mass. 126; Hathaway v. Ins. Co., 134 N. Y. 409, 32 N. E. 40, 17 L. R. A. 514; Bergman v. Ins. Co., 92 Ky. 494, 18 S. W. 122, 123, 15 L. R. A. 270; Brown v. Ins. Co., 5 R. I. 394; Scottish U. &

N. v. Field, 18 Colo. App. 68, 70 P. 149; Phenix Ins. Co. v. Omaha etc., 41 Neb. 834, 60 N. W. 133, 25 L. R. A. 679; and Georgia Ins. Co. v. Stein, 72 Miss. 943, 18 So. 414, 415.

In the Harrington Case, decided by the Supreme Court of Massachusetts, the policy was made payable to the mortgagee. In the Hathaway Case the mortgage contained a covenant that the building covered by the mortgage should be kept insured for the benefit of the mortgagee. In the Bergman Case, the mortgagee held a mortgage in excess of all insurance carried, and the "loss was made payable to him, the mortgagee, by the act and consent of the companies and the insured." In the Brown Case the direction in the policy was that the "loss or damage, if any, is payable to the mortgagee," and the court held that this was equivalent to an unconditional assignment of the policy to the mortgagee. In the Scottish Union and Phenix Cases the policies contained the "union mortgage clauses," and in the Georgia Ins. Co. Case the court said that:

"By the express terms of the policy, the loss was made payable to him," the mortgagee.

The other cases cited are not explicit as to the mortgage clause, and throw no light upon the issue now before us.

6. The case of Erie Brewing Co. v. Ohio Farmers' Ins. Co., to which we have referred, is reported in 25 L. R. A. (N. S.) 740, where there is a lengthy case note appended. The annotator criticizes rather severely the court's holding that a "mortgagee clause" attached to a fire insurance policy, which clause makes the loss, if any, payable to the mortgagee as his interest may appear, "is not an assignment of the policy to such mortgagee,

and, in the absence of fraud or collusion, he is bound by the award of appraisers provided for and required by the terms of the policy * * * although the mortgagee was not a party to, and had no notice of, the appraisement and award."

The annotator says: "This construction is not supported by any one of the other authorities upon this question."

The Ohio Supreme Court had before it for construction a policy which contained the "union mortgage clause," and it is stated in the note that the court, in order to reach the conclusion which it did, "found it necessary to hold that such a clause was not intended to create a new and separate contract between the insurer and the mortgagee, but merely to designate a payee of the proceeds of the insurance upon the occurrence of the loss."

The court unquestionably departed from the general rule theretofore followed in construing fire policies containing the "union mortgage clause," and it was its holding in this respect which brought on the criticism. The criticism is not leveled at the general proposition, which seems to be unanimously supported by the authorities, that in cases where the policy contains the open or ordinary mortgage payable clause, the mortgagee is bound by an appraisement and award made by appraisers appointed by the insurer and the assured in accordance with the express terms of the contract of insurance.

7. Counsel for the mortgagee cite the case of Tilley v. Camden Fire Ins. Co., 139 La. 985, 72 So. 709, 710, in support of their contention. That case is readily distinguishable from the one now before us. In that case Stinson's house was insured for $1,350, with loss clause

payable to Dr. Tilley, the mortgagee, "as interest may appear." The policy was delivered to Dr. Tilley, who held it at the time the house was totally destroyed by fire. The insurance company, without the concurrence of the assured, Stinson, had an appraisement made, which showed the sound value of the property destroyed to be $1,412.61. Proof of loss was made out by the insurance company and forwarded to Stinson, who approved it. In stating the amount due under the policy, the company inserted the figures $1,059.46, which was three-fourths of the loss sustained. "Stinson, not knowing that, under Act No. 135 of 1900 and Act No. 187 of 1908, he was entitled to the full amount of the insurance on the property totally destroyed, did not complain of the adjuster's having invoked the three-quarter value clause, but accepted the figures as correct." The court found that the amount due by Stinson to Dr. Tilley, the mortgagee, was $1,330, which exceeded the amount which Stinson had, through error, agreed to accept. It was held that Dr. Tilley was not bound by the erroneous adjustment accepted by the mortgagor and erroneously approved by him, the mortgagee.

In the case at bar, there is no allegation or suggestion of error or fraud on the part of either the insurer or the assured in making the adjustment. All things were done in exact accord with the terms of the policy, and we hold that the mortgagee is bound by the award.

The precise point here involved has not heretofore been passed upon by this court, although there are two cases which hold against the proposition that under a fire policy making the loss, if any, payable to the mortgagee, as his interest may appear, the mortgagee "is virtually the assured."

We refer to the case of Monroe Bldg. & Loan Ass'n v. Liverpool & L. & G. Ins. Co., 50 La. Ann. 1243, 24 So. 238, where it was held that the relation between the insurer and the insured was not changed or affected by the loss payable clause in favor of a mortgagee creditor, and the case of Hardy v. Commercial Standard Ins. Co., 172 La. 500, 134 So. 407, 410, where that holding was approved.

8. We find no merit in the contention that the provision in a fire insurance policy for the appointment of appraisers by the insurer and the assured to ascertain the amount of loss and damage is contrary to public policy and therefore illegal. Counsel cite Saint v. Martel, 127 La. 73, 53 So. 432; Myevre v. Liberty Realty & Securities Co., 156 La. 496, 100 So. 694; and Gauche v. Building Co., 125 La. 530, 51 So. 578, in support of the proposition that:

"Courts will not compel persons to appoint arbitrators, nor will they otherwise enforce agreements whereby persons undertake, with regard to matters arising in the future, to close the doors of the courts against themselves."

These cases are not in point. By inserting such a clause or provision as that above mentioned, in an insurance contract, the parties do not undertake to close the doors of the courts against themselves with "regard to matters arising in the future." The purpose of the provision is merely to provide a method of ascertaining the sound value of the property destroyed and the amount of loss or damage sustained by the assured when liability is admitted by the insurer. It is not

intended that the appraisers shall determine the question of liability, but only the amount thereof when liability is admitted. Such provisions in fire policies have been repeatedly sustained by the courts.

The case of Hamilton v. Liverpool & L. & G. Ins. Co., 136 U. S. 242, 10 S. Ct. 945, 949, 34 L. Ed. 419, is directly in point. The court said that the conditions of the policy "clearly and unequivocally manifest the intention and agreement of the parties to the contract of insurance that any difference arising between them as to the amount of loss or damage of the property insured shall be submitted, at the request in writing of either party, to the appraisal of competent and impartial persons," and,

"Such a stipulation, not ousting the jurisdiction of the courts, but leaving the general question of liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is unquestionably valid, according to the uniform current of authority in England and in this country," citing numerous cases.

In Hamilton v. Home Ins. Co., 137 U. S. 370, 11 S. Ct. 133, 138, 34 L. Ed. 708, the court said: "A provision in a contract for the payment of money upon a contingency that the amount to be paid shall be submitted to arbitrators, whose award shall be final as to that amount, but shall not determine the general question of liability, is undoubtedly valid."

The case of Glidden Co. v. Retail Hardware Mut. Fire Ins. Co., 181 Minn. 518, 233 N. W. 310, 77 A. L. R. 616, involved the constitutionality of the arbitration provision of the standard fire insurance policy prescribed by a statute of Minnesota. The Supreme Court of that state ruled "that the authority of the arbitrators did not extend to a determination of the liability under the policy, which was a judicial function reserved to the courts, but that their decision as to the amount of the loss, is conclusive upon the parties, unless grossly excessive or inadequate or procured by fraud."

The case was carried to the United States Supreme Court on a writ, where the ruling of the Minnesota court was upheld, the court saying:

"The present statute substitutes a determination by arbitration for trial in court of the single issue of the amount of loss suffered under a fire insurance policy."

See 284 U. S. 151, 52 S. Ct. 69, 71, 76 L. Ed. 214.

This method of settling the amount of loss sustained was approved by our court in the case of Hart v. Ins. Co., 136 La. 114, 66 So. 558, and in Martin v. Home Ins. Co., 16 La. App. 216, 133 So. 773.

For the reasons assigned, the judgment of the district court and that of the Court of Appeal are reversed, and it is ordered that the tender of $150 made by the American Eagle Fire Insurance Company to Mrs. Lucy Ferguson, the succession representative of the assured, and to Dr. Henry R. Officer, the mortgagee, be accepted as the full amount due under the policy without penalties or costs, except such costs as may have accrued prior to the tender.

O'NIELL, C. J., concurs, but is of the opinion that the language of the *loss payable*

clause itself shows that the mortgagee has no right whatever under the policy except to receive any loss that may be ascertained to be due to the assured; because the *loss payable* clause is made "subject to all the provisions, exclusion, conditions and warranties contained in this policy."