*335
 
 On-Rehearing.
 

 ODOM, Justice.
 

 This rehearing was granted on the application of the Oanal Bank & Trust Company, the holder of the notes secured by first mortgage on the property destroyed by fire.
 

 The property was insured in favor of the receiver, and each of the policies involved had attached to it a loss payable clause reading as follows:
 

 “Any loss proved to be due the assured under this policy is held payable to the holder or holders of the first mortgage notes, as their interest may appear, subject however to all the conditions of this policy; the balance, if any, payable to the assured.”
 

 It is the bank’s theory; and its counsel strenuously insist, that by virtue of this loss payable clause attached to the policies, the entire proceeds of the policies should be paid to it
 

 Under the facts here disclosed, this contention is not tenable. The property insured belonged to the Clover Ridge Planting & Manufacturing Company, then in the hands of a receiver, who represented it. The policies were contracts between, the insurance. companies and the receiver, by which the companies bound themselves to indemnify the receiver, not the mortgagee, for such loss as might be- sustained by fire; so that the amount realized from the proceeds of the policies constituted an asset of the receivership unless it be held that the loss payable clause-attached--to the'policies so changed the nature- of the insurance contracts as to make them contracts between the companies and the mortgagee instead of contracts between the companies and the mortgagor represented by the receiver.
 

 The loss payable clause attached to these policies is what is ordinarily called an “open or ordinary- loss payable clause,” the effect of which, and the only effect, is to constitute the mortgagee a conditional appointee of the mortgagor to receive payment of the proceeds in ease of loss, or, as said in Cooley’s Briefs on Insurance, vol. 3, page 2383, “an appointee to receive the money in case of loss.”
 

 The loss payable clause attached to the policies did not change the contractual relations between the companies and the property owner, nor can it be construed as an assignment of the policies. The contract remained one between the insurer and the property owner.
 

 In the case of Officer v. American Eagle Fire Insurance Co., 175 La. 581, 143 So. 500, 502, we had under consideration a fire policy which had attached to it a loss payable clause similar to, if not identical with, the one here involved, making the proceeds payable to Dr. Officer, the mortgagee, as his interest might appear. The question there involved was whether Dr. Officer, the mortgagee, should be consulted in the settlement of the loss. In that case, as here, the policy was in favor of the property owner, the mortgagor.
 

 The policy provided that “in case the assured and this company shall fail to agree as to the amount of loss or damage, each ■shall, on the written demand of either, select a competent and disinterested, appraiser,” who with an umpire selected by them should
 
 *337
 
 appraise the loss and damage. Dr. Officer contended that, by virtue of the loss payable clause attached to the policy, he was a party to' the contract of insurance and should be given a voice in the appraisement, which privilege was denied him. It was necessary therefore to decide whether an open or ordinary loss payable clause, making the proceeds payable to the mortgagee as interest might appear, attached to a fire policy in favor of the mortgagor, had the effect of so changing the contract as to make the mortgagee a party, and we held: .
 

 “Under policies containing such a clause, the contract remains one exclusively between the insurer and the property owner. The mortgagee is only a conditional- appointee of the mortgagor to receive part of the proceeds in case of loss.”
 

 This holding is in exact accord with the jurisprudence of other states, as shown by the cases there cited and the following additional authorities:
 

 In Walker v. Queen Ins. Co., 136 S. C. 144, 134 S. E. 263, 270, 52 A. L. R. 250, the court said:
 

 “It is universally held that the open mortgage clause does not create a new and independent contract between the insurance company and the mortgagee; that the original contract between the company and the insured remains.”
 

 In Van Buren v. Eire Ins. Co., 28 Mich. 398, the court said:
 

 “But this policy creates no contract relation between the insurance company and the mortgagee. It is a contract only between the company and the plaintiff.”
 

 In Cooley’s Briefs on Insurance, vol. 3, page 2383, it is said:
 

 “If the policy contains merely the ordinary loss payable clause, the mortgagee is merely an appointee to receive payment in case of loss and has no direct rights against the insurer, but recovers solely on the right of his mortgagor, and is therefore affected by a forfeiture, the same as the mortgagor. * * *
 

 “The theory of the rule is, as shown in the leading case of Grosvenor v. Atlantic Fire Ins. Co., 17 N. V. 391, that the policy is the contract of the mortgagor and ah insurance of his interest, the mortgagee being merely an appointee to receive the money in case of loss. The contract as to him is collateral to the principal undertaking to pay the mortgagor.”
 

 The contracts of insurance here involved having been written to indemnify the property owner for any loss which might be sustained by fire, and the loss payable clause attached to them not having changed or altered the original contract, it follows necessarily that when the property was destroyed by fire and the amount of the loss was ascertained and adjusted the proceeds of the policy belonged to the receiver and constituted an asset of the receivership. The receiver was the insured, and the loss was his loss. The/ amount received as proceeds of the policies was as much an asset of the receivership as was the property before the fire.
 

 It is manifest that the parties to the insurance contracts so construed them because the loss payable clause itself stipulated that “any loss
 
 proved, to he due the insured under this policy
 
 shall be payable,” etc. (Italics ours.)
 

 
 *339
 
 The amount received as proceeds of the fire policies being an asset of the receivership, it was manifestly the duty of the receiver to ■ distribute that amount among the creditors according to the rank of their claims. The bank could not be paid by preference because it had subordinated its claim to that of the holders of the certificates. On two separate occasions while the receivership was pending the bank, through its president, Mr. Pool, wrote the receiver that it took cognizance of his application to issue receiver’s certificates in order to raise funds to operate the plant as a going concern, and in each of these letters it was stated:
 

 “This is to confirm our advice to you that we, as a mortgage creditor of the Clover Ridge Pltg. & Mfg. Co., Inc., have consented to the issuance of certificates by you as receiver * * * under the above mentioned order and petition.”
 

 And:
 

 “We further agree that said certificates * * *
 
 shall he paid hy preference and priority
 
 over our mortgage, out of the assets of said corporation.” (Italics ours.)
 

 By so agreeing the bank subordinated its claim to the assets of the receivership to that of the bona fide holders of the certificates. Our holding that the amount collected from the insurance companies constituted an asset of the .receivership disposes of the case in so far as the bank is concerned.
 

 It is therefore ordered that our former decree be reinstated and made the final decree of the court.
 

 ST. PAUL, J., takes no part.