Alleging that it was owner of a chattel mortgage note signed by R.L. Benoit and covering a 1940 Mercury Sedan, which chattel mortgage was duly recorded, and that defendant had issued a policy of insurance covering this car against collision and damage that was in full force on March 13, 1946, when the car was damaged in an amount greatly in excess of the balance due on plaintiff's chattel mortgage, and that under an endorsement on the policy the loss was payable to plaintiff, the Commercial Securities. Company filed this suit for $445.92, with interest and costs.
Defendant admits issuance of the policy and execution of a loss payable endorsement in favor of plaintiff but defended on the grounds that liability did not exist under a certain exclusion clause of the policy, providing that the insurance did not apply "* * * while the automobile is subject to any * * * mortgage * * * not specifically described in this policy," and that, at the time of the loss the automobile covered by the policy was encumbered by two additional chattel mortgages, both executed by R.L. Benoit, one in favor of the Motor Securities Company and the other in favor of the Motor Finance Company.
In the alternative, defendant pleaded that if it was responsible at all, its liability should be reduced to one-third of the loss by virtue of the provision of the policy that, in the event there was other insurance against the loss covered by the policy, the insurer should be liable to no greater proportion of the loss than its limit of liability bore to the total limits of liability on all valid and collectible insurance against such loss; that at the time of the loss, the insured, R.L. Benoit, had other insurance on the same automobile in both the Continental Insurance Company of New York and the Louisiana Fire Insurance Company of Baton Rouge, each for the actual cash value of the car and that, therefore, defendant's liability, if any, should not exceed one-third of the loss.
The case was submitted to the district court upon an agreed statement of facts under which defendant admitted that R.L. Benoit was the owner of the automobile and had executed a chattel mortgage to plaintiff as alleged; that there was an unpaid balance as set forth in the petition; that R.L. Benoit was owner of a policy in the defendant company, as alleged, and that the defendant company, through its local agent, had issued an endorsement which became a part of the policy. That this insurance had not been canceled by either Benoit or the company on March 13, 1946, when the car was damaged in an amount in excess of plaintiff's claim; that no payment has been made by defendant to either Benoit or to plaintiff; that the policy contained the exclusion clause that the insurance did not apply "while the autombbile is subject to any * * * mortgage * * * not specifically described in the policy"; and that at the time of the loss, R.L. Benoit had previously executed the two chattel mortgages above mentioned; that neither mortgage had been filed of record at the time of the collision and that the existence of neither was known to either plaintiff or defendant at the time of the loss; that the policy contained the provision above set forth that the company should not be liable for a greater portion of the loss than its applicable limit of liability of all valid and collectible insurance; that at the time of the loss, R.L. Benoit had a policy of insurance with the two companies above listed, both for the actual cash value of the car; that at the time of the loss, the existence of these policies was unknown and undisclosed to both the plaintiff and defendant; that no payments have been made to any one by any of the insurance companies *Page 714 
involved by reason of the loss; and that the acts of Benoit in the premises were not disclosed to either plaintiff or defendant.
By stipulation of counsel, the Central Surety Fire Corporation was substituted as defendant, in lieu of the Central Surety and Insurance Corporation.
From a judgment of the district court granting plaintiff judgment, as prayed for, the defendant prosecuted this appeal.
The suit involves the right of the plaintiff as mortgagee to collect upon a policy of insurance issued to the owner, where the policy in question had been endorsed, as follows: "This automobile is now loss payable to: Commercial Securities Co., J. L. Rucker Insurance Agency by J.L. Rucker."
It is admitted in the stipulation of facts that subsequent to the execution of the loss payable endorsement and prior to the collision, Benoit had executed both the chattel mortgages above set forth upon each of which there was a substantial unpaid balance. Plaintiff's contention is that under the endorsement as written, the entire proceeds of the policy were payable to it and that plaintiff by virtue of this unqualified endorsement became the unconditional owner of the right to receive the entire proceeds of the policy; and that consequently, no future action of Benoit, even though it constituted a violation of the policy provisions, could defeat plaintiff's right as unconditional assignee of the collision benefits that might become payable under the policy. Plaintiff virtually concedes that if the endoisement had made the loss payable to plaintiff "as its interest might appear" there would be a vast difference in the legal situation.
A full discussion by the Supreme Court of Louisiana of the point involved here is found in the case of Officer v. American Eagle Fire Insurance Co., 175 La. 581, 143 So. 500. There the court held that the language of the endorsement was not of the nature to evidence a contract between the insurer and the mortgagee, who was designated simply as payee "as the interest may appear." The full endorsement in that case read as follows: "Subject to all the provisions, exclusions, conditions and warranties contained in this policy, loss, if any, payable as interest may appear, to the assured and Dr. H.R. Officer."
In commenting upon what interpretation should be placed upon an endorsement making the entire proceeds, in case of loss or damage, payable to the mortgagee, the court said: "In some of the cases it was found that the policies contained a provision making the entire proceeds, in case of loss or damage, payable to the mortgagee. In all such cases it is held that such a loss payable clause operates as a complete and unconditional assignment of the policy by the assured to the mortgagee."
The loss payable clause now before the court plainly states that the loss is to be paid to the Commercial Security Company. There is no condition that such payment is subject to the provisions and conditions of the policy which were binding upon Benoit, the insured. The endorsement gave to the plaintiff the right to receive the entire proceeds of the policy in the event of loss.
It is true that the portion of the opinion quoted above from the Officer case is obiter dicta. However, in the case of Wray-Dickinson Co. v. Commercial Credit Co., Inc., 192 So. 769, 772, this Court of Appeal, in commenting upon a loss payable clause so worded that the entire loss was payable to the assignee, cited the Officer case as authority for holding such an endorsement to be an unqualified assignment to the mortgagee, stating: "By the express terms of the policy, the loss was made payable to the defendant herein, the mortgagee; and under all decisions such a stipulation is held to be an unqualified assignment of the policy to the mortgagee. Officer v. American Eagle Fire Insurance Co., 175 La. 581, 582,143 So. 500."
In Investors' Mortgage Co. v. Marine Motor Insurance Co. of America (on rehearing), 155 La. 627, 636, 99 So. 486, 489, the loss payable clause before the court read: "Loss payable to Investors' Mortgage Company, or holder or holders of mortgage notes."
We quote from the decision: "It must be observed that the policy in suit is not such as is known as the ordinary standard policy, with the usual rider, making the loss payable to plaintiff, as 'its interest may *Page 715 
appear.' Here the interest of plaintiff appears on the face of the policy, and then are added the words: 'Loss payable to Investors' Mortgage Company, or holder or holders of mortgage notes.' This is not a conditional stipulation, for it recognizes and fixes the interest of the plaintiff in the property insured."
In the above-quoted case, the question presented was whether the taking of additional insurance by the named insured vitiates the policy. The court held in favor of the mortgagee on the premise that such an endorsement is unconditional and, therefore, recognizes and fixes the mortgagee's interest in the property and that violation of the terms of the policy by the owner cannot defeat the mortgagee's unconditional ownership to the benefits which might become due to it as assignee. In the case now before us the endorsement to plaintiff, Commercial Security Company, Inc., is an unqualified one and the defendant's claim of exclusion from liability is based upon the fact that the action of the insured in placing the additional (and unrecorded) mortgages — in violation of the terms of the policy — (which admittedly vitiated the policy as between the insurer and the insured) operated to release the insurer from its liability to the mortgagee under the unconditional endorsement.
It has been held that a contract of insurance is personal and does not run with the property. In Hartford Fire Insurance Co. v. Landreneau et al., 19 La. App. 280, 140 So. 52, 55, the court stated: "* * * But where, in a case like this, the policy contains a rider under which the loss, if any, is made payable to another party specifically designated by name, the rights of that party to the proceeds, even though he be the holder of a second mortgage, cannot, in our opinion, be defeated if those provisions of law making an insurance contract strictly a personal contract which in no sense runs with the property mean anything."
[1] Since the endorsement before the Court constitutes an assignment of the policy and creates new rights in favor of the assignee, the actions of Benoit, the named insured, though sufficient to vitiate the policy as to him, could not operate to destroy the interest of plaintiff. Under such an unqualified endorsement, no action on the part of the insured can defeat the right of the mortgagee to recover unless the mortgagee had knowledge of or consented to the acts on the part of named assured. This principle is set forth in the Annotations in 124 A.L.R., page 1038, as follows: "Conversely, a majority of the courts hold that the so-called 'standard' or 'union' mortgage clause, referred to supra I, making the mortgagee a payee * * * constitutes an independent contract between the mortgagee and the insurer."
We, therefore, conclude that when the assignment is an unqualified one, making the loss payable (without condition) to the mortgagee, that the mortgagee becomes a party at interest in the policy and is interested in the insuring provisions on its own account and its rights are not destroyed by the acts or neglect of the mortgagor to which the mortgagee gave no consent and of which it had no knowledge.
The question as to whether the named assured could recover for the loss or whether the insurer may recover from the named assured the amount which it may be condemned to pay plaintiff herein is not now at issue.
[2] The defendant has urged, in the alternative, that its liability should be limited to one-third of the loss by reason of the fact that Benoit had two additional outstanding policies covering the same automobile since there is a proviso in the policy sued upon that payment of loss in such case should be pro rated proportionately. The record or stipulation does not affirmatively establish the fact that the other policies are valid and collectible. It may be that they each contain an exclusion clause, similar to that in the policy sued upon, releasing the insurer from liability "while the automobile is subject to any * * * mortgage * * * or other encumbrance not specifically described in this policy," and since the prorating provision relied upon by the defendant applies to "applicable limit of liability of all Valid and Collectible insurance against such loss," the district judge correctly *Page 716 
rejected defendant's alternative prayer for proration of the liability.
The judgment is affirmed with costs.