CHIASSON, Judge.
On October 17, 1972 Triple R. Contractors, Inc. mortgaged to Louisiana National *517 Bank (LNB) 4.89 acres of a 6.60 tract Triple R owned in East Baton Rouge Parish. The mortgage was given to secure a loan to be used to construct a 94 unit apartment complex on the property mortgaged. These 94 units were to he Phase I of a larger project. Colwell Mortgage Trust provided 90% of the funds for the project, 10% of the funds being provided by LNB. At the completion of Phase I, the mortgage and the note which it secured were to be assigned to Colwell Trust which would pay LNB its 10%.
Between October 17, 1972 and March 29, 1973, Triple R acquired an additional 2.58 acres adjacent to the original 6.60 acre tract. On March 29, 1973, Triple R mortgaged to LNB a 9.18 acre tract composed of the original 6.60 acres and the additional 2.58 acres. This mortgage was given to secure a loan to be used to construct a 97 unit apartment complex on that portion of the 9.18 acre tract, 4.29 acres, not used in Phase I construction. These 97 units were to form Phase II of the project. Recorded with the March 29, 1973 mortgage was an affidavit signed by a licensed civil engineer to the effect that no work had begun on and no materials had been furnished to the 4.29 acres involved in Phase II. Financing of Phase II was the same as Phase I with 90% of the funds being provided by Colwell Mortgage Trust.
On March 29, 1973 appellant, LNB, also executed and recorded an Act of Modification which amended the October 17, 1972 mortgage to include the entire 9.18 acre tract and to refer to the Phase I building site as 6.60 acres.
Phase I was accepted as complete on January 2, 1974 and a clear lien certificate was issued by the Clerk of Court on February 4, 1974. The mortgage on Phase I was then assigned to Colwell Mortgage Trust.
Prior to the completion of Phase II, defendant, Triple R, defaulted under the terms of both the Phase I and Phase II mortgages and notes. As a result Colwell Mortgage Trust instituted foreclosure proceedings against the Phase I complex and LNB instituted foreclosure proceedings against the Phase II complex.
A number of interventions claiming ma-terialman’s liens were filed against the Phase II property by persons who had furnished supplies and materials to that project. On February 12, 1975 the property was adjudicated to LNB by Sheriff’s sale subject to any liens and encumbrances which primed the mortgage in favor of LNB. LNB then brought this rule to have its mortgage recognized as superior to the claims and liens of the intervenors and to have LNB declared to be entitled to the said property free and clear of all liens and other encumbrances.
After a hearing on the rule the Trial Court rendered a judgment with written reasons in favor of the intervenors ap-pellees. It is from this judgment that the appellant, LNB, brings his appeal.
In his brief counsel for the appellant argues that the Trial Court erred as follows:
“1. In failing to find of this project was ‘ — a separate phase of subdivision development and pursuant to separate and distinct construction contracts’ within the precise meaning and definition of R.S. 9:4816(a);
“2. In finding that the engineer’s Affidavit of No Work of March 29, 1973, was insufficient in that it did not 'cover the entire ‘job site’;
“3. In finding that the ‘property mortgaged’ and the ‘job site’ are the same; and
“4. In finding that the bank knew or should have known of the inadequacy of the engineer’s certificate and therefore could not rely on the engineer’s Affidavit to establish its superiority.”
*518 The Trial Court found that the evidence adduced established that the construction of these apartments was one project, albeit, built in two phases. .This decision was based on consideration of a number of facts. The apartment units built under Phase I and Phase II are now one apartment complex; the complex has one integrated mechanical system and one central driveway; Phase I debts were paid with money from the Phase II mortgage and the development was conceived as one project from the beginning. An additional factor which supports the finding of one project is the Planning Commission decision which would not have permitted construction of Phase II as a separate complex. The evidence clearly supports the Trial Court’s finding.
The first error specified by the appellant is that the Trial Court did not find the two projects separate phases of subdivision development.
R.S. 9:4816(A) provides:
“Any person furnishing service or material or performing any labor for the contemporaneous and continuous construction or improvement of two or more ■buildings or works by a single general contractor under a single construction contract, which buildings or works are situated on adjacent lots or parcels of land of a single owner, may file a single privilege upon all said buildings or works and upon the lands on which they are situated. Such a privilege shall secure the payment in principal and interest of the entire amount due for all service, material or labor, furnished and performed, and the costs of recording said privilege. Proof of the performance of labor on, or the delivery of materials to any of the said buildings or works shall be sufficient to establish the performance of labor on, or the delivery of materials to all such buildings or works. Such a privilege shall not attach to or bear upon any building or upon the land on which it is situated, where all materials and service have been furnished and all labor performed upon that particular building or portion of land on which it is situated, more than sixty days prior to the filing of said privilege. Such a privilege shall not attach to or bear upon buildings or works or the land on which they are situated, constructed or improved by other general contractors on adjacent lots or parcels of land, or constructed or improved by the same general contractor .on adjacent lots or parcels of land, during a separate phase of subdivision development and pursuant to separate and distinct construction contracts.”
The purpose of this statute is to allow for efficiency in subdivision development. Bernard Lumber Co. v. John F. Cerise Co., 148 So.2d 819 (La.App., 44 Cir., 1963). It permits the supplier of materials to be used in the construction of multiple buildings or works situated on adjacent lots or parcels of land in those cases where construction is continuous and performed under a single construction contract to make delivery of materials to one location and to obtain a privilege on the multiple works by the filing of a single lien. This statute is not intended to create additional rights for a mortgagee, rather it is intended to make the filing of liens in multiple works projects built under single construction contracts simpler. Because this project was not developed under a single construction contract and because ap-pellees are not attempting to obtain a privilege on multiple works under a single lien this statute does not apply to the present case. The phrase “. . . Such a privilege shall not attach to or bear upon buildings . . . constructed . . . during a separate phase of subdivision development . . .” refers only to the privilege granted in the first sentence of R.S. 9:4816; it does not affect the ranking of privileges under R.S. 9:4801.
*519 The Private Works Act, R.S. 9:4801 et seq., provides a set of rules by which a mortgagee may obtain priority over competing claims. R.S. 9:4801 provides for a materialman’s lien and for a ranking of that lien. A person who supplies materials used in the construction or improvement of immovable property at the owner’s request or with the owner’s consent has a privilege on the land and improvements for which the materials were furnished. This privilege is superior to all claims except laborer’s liens, taxes and local assessments for public improvements, and bona fide vendor’s privileges or mortgages where the vendor’s privilege or mortgage existed and was recorded before the work was begun or any material was furnished. For LNB’s mortgage to prime the liens of the materialmen, the mortgage must have been recorded before work or labor was begun or any material was furnished to the job site.
R.S. 9:4819(A)(1) and (3) provides:
“(A) The phrase ‘before the work or labor is begun or any material is furnished’, as used in R.S. 9:4801-9:4817, both inclusive, shall be defined as follows :
“(1) In the event that the work or construction is new, then ‘work or labor is begun or material is furnished’ is defined as having begun when either excavation has been started so that it can be observed on inspection, or material has been furnished and delivered to the job site which is visible upon inspection and which material when delivered had a value in excess of one hundred dollars provided, however, that test piling shall be excluded from this definition.
“(3) In any event, if an affidavit, duly signed by an architect, a licensed civil engineer or registered land surveyor, before a notary public, has been filed in the office of the clerk and recorder of the parish in which the property is located or in the case of Orleans Parish, in the mortgage office thereof, which affidavit certifies that he has inspected the job site on a certain date and at a certain time and that no work has begun or material furnished to the building site, either on new construction or or on the improvement, repair or reconstruction of existing construction; and such affidavit is filed immediately prior to the filing of a bona fide mortgage or bona fide vendor’s lien, or within two business days thereafter, then any lender, including banks, savings and loan associations, life insurance companies, credit unions or other institutional lenders, and other interested parties may rely on the facts recited in said affidavit and shall maintain any and all privileges to and priority over other liens and claims as conferred by Title 9, and particularly, 9:4801, 9:4812, and 9:4813. The filing of such an affidavit will in no wise prejudice the rights of the furnishers of labor or material to file and perfect liens to which they may be entitled, but if materials have been furnished after the affidavit of the engineer, architect or surveyor has been filed, then a materialmen’s lien is subordinated to the bona fide mortgage or vendor’s lien.”
The engineer’s affidavit of March 29, 1973 on which LNB relied covered only the 4.29 acres upon which Phase II was to be built. The statute requires that material be visible on the “job site” and that the affidavit certify that no materials have been furnished to the “building site”. The “building site” is not just the area under the building. Myevre v. Liberty Realty & Security Co., 156 La. 496, 100 So. 694 (1924). The Trial Judge found as a matter of fact, under the circumstances of this case, that the “job site” was coextensive with the property mortgaged. There is no evidence in the record that the 9.18 acre tract was divided into two separate job sites or work areas. On the contrary, the evidence supports the Trial Court’s conclusion that the apartment complex was one project built in two *520 phases. When the evidence before the trier of fact furnishes a reasonable factual basis for the Trial Court’s finding, the Appellate Court on review should not disturb this finding in the absence of manifest error. Canter v. Koebring Company, La., 283 So.2d 716 (1973). Since the engineer’s affidavit did not cover the entire “job site” it was legally insufficient.
LNB knew or should have known of the inadequacy of the engineer’s affidavit. Since LNB was financing the construction of Phase I it knew or should have known that there was construction on the 9.18 acre tract. LNB may not rely on the engineer’s affidavit where it knew or should have known of the insufficiency of the affidavit.
Because the mortgage covering Phase II of the project was not filed before work had begun or any material was furnished, LNB’s mortgage does not prime the liens of the appellees.
Therefore the judgment of the Trial Court in favor of the intervenors-appel-lees is affirmed, cost to be paid by the appellant.
AFFIRMED.