## WHITNEY NATIONAL BANK OF NEW ORLEANS

v.

## STATE FARM FIRE AND CASUALTY COMPANY.

Civ. A. No. 80–1903.

United States District Court, E. D. Louisiana.

July 21, 1981.

---

**360**

John D. Wogan and Laura E. Junge of Monroe & Lemann, New Orleans, La., for plaintiff.

P. A. Bienvenu and Ernest L. O'Bannon of Bienvenu, Foster, Ryan & O'Bannon, New Orleans, La., for defendant.

CHARLES SCHWARTZ, Jr., District Judge.

This matter was tried to the Court, without a jury, on a former day, at which time the matter was taken under advisement pending receipt of post-trial briefs. Now, after due consideration of the evidence adduced at trial, the arguments of counsel, the briefs, and the law, the Court now makes the following findings of fact and conclusions of law.

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

### FINDINGS OF FACT

Plaintiff Whitney National Bank of New Orleans (Whitney) is a domiciliary of Louisiana and defendant State Farm Fire & Casualty Company (State Farm) is a foreign insurer, qualified to do and doing business in the State of Louisiana, with its principal place of business in a state other than Louisiana and the amount in controversy exceeds $10,000.00.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

The facts are stipulated, and/or established by the exhibits received in evidence.

On May 27, 1979 a fire damaged or destroyed property of Foreign Car Parts, Inc., 4921 Airline Highway, Metairie, Louisiana. This fire was caused by arson instigated by Robert Bradford Smith and participated in by others, including Davis King, Jr. At the time of the fire Robert Bradford Smith was President, Registered Agent and General Manager and supervised all the operational activities of Foreign Car Parts, Inc. All of the common stock of Foreign Car Parts, Inc. was registered to the name of Marilyn Furman Smith at the time of the fire, and at that time Marilyn Furman Smith was the wife of Robert Bradford Smith.

The actual value of the contents, inventory and other chattels (or movable property) located at Foreign Car Parts, Inc. as of the

date and time of the fire was $264,565.00. After the fire the aforesaid property had a value of $35,000.00 and therefore the loss insofar as it pertains to contents amounted to $229,565.00.

Robert Bradford Smith on April 9, 1980 pleaded guilty to the arson which caused the loss.

On December 1, 1976 State Farm issued a Special Multi-Peril Policy covering liability and personal property of Foreign Car Parts, Inc. (the policy). The original policy in Item 7 of the declarations page thereof shows the following as mortgagee: "Security Homestead and Whitney National Bank, 222 Baronne Street." The endorsement effective on April 12, 1977 states as follows: "Security Homestead relates to the real estate and Whitney National Bank relates to contents, inventory and other chattels." Whitney is the mortgagee as to the movable property, that is the contents, inventory and other chattels of Foreign Car Parts, Inc. as holder of a collateral mortgage note in the sum of $1,000,000.00 executed in connection with an authentic act of collateral mortgage by Foreign Car Parts, Inc., executed March 3, 1977 before Steve J. Mortillaro, Notary Public. The mortgage indebtedness to Whitney far exceeds the fire loss and damage to the movable property, contents, inventory and other chattels of Foreign Car Parts, Inc. Attached to and forming part of the policy are endorsements MLB–100 entitled "SMP General Property Form," (Attached hereto as Appendix A) and MLB–101 entitled "SMP Special Building Form," (attached hereto as Appendix B). It is obvious that said endorsement MLB–101 cancels and replaces any coverage on buildings provided under any other form made a part of the policy.

State Farm also issued a separate "Loss Payable Clause" Form LPC 17 (attached hereto as Appendix C) to CIT Financial Service Corporation. Both Endorsements MLB–100 and MLB–101 at Section 9 entitled "Conditions" provide in pertinent part as follows:

"C. *Mortgage Clause:*

Applicable to buildings only (this entire clause is void unless name of mortgagee (or trustee) is inserted in the Declaration): Loss, if any, under this policy shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear under all present and future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of such mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property . . ."

The personal property insured by defendant under the policy was at the time of the fire owned by the insured.

Plaintiff duly notified defendant of its loss and damage and within the time specified in the policy caused to be served upon the defendant due and proper proofs of loss. However, defendant has failed and refused to pay plaintiff's loss and damage.

## CONCLUSIONS OF LAW

The sole issue in this case is whether the arson of Foreign Car Parts, Inc. bars Whitney's claim as the holder of the aforesaid chattel mortgage on the contents of Foreign Car Parts, Inc.[1] In order to resolve the dispute it is necessary to determine whether Whitney is entitled to the protection of the "New York Standard" or "Union Mortgage Clauses"[2] of the policy or wheth-

---

1. The parties have also stipulated that Smith's arson is imputable to Foreign Car Parts, Inc., and thus, that company is barred from recovery pursuant to the policy.

2. The distinction between the rights of a mortgagee protected by the standard or union mortgage clause and the mortgagee under the open mortgage clause is set forth in Appleman, Insurance Law and Practice, § 3401 at p. 292–296.

"A distinction which is rather important to grasp is that *the policy terms are themselves not nullified by a standard mortgage clause.* It is rather, that a new contract containing those provisions is made with the mortgagee personally; and the mortgagee is not bound by the

er Whitney is otherwise to be treated as a party entitled to unconditional recovery. Whitney in part argues that the rights set forth in Declaration "C" are applicable to chattel mortgages and/or contents as well as to buildings, and thus claims the benefit of the standard or union mortgage clause.

■ Louisiana law is in accord with the law in almost all jurisdictions to the effect that where there are loss payees in a policy of insurance pursuant to an open mortgage clause, i. e. without inclusion of a standard or union mortgage clause, their right to recover is contingent upon, and purely derivative of the right of the mortgagor to recover from the insurer. *Officer v. American Eagle Fire Insurance Co.*, 175 La. 581, 143 So. 500 (1932); *Eicher-Woodland Company, Inc. v. The Buffalo Insurance Company of New York*, 198 La. 38, 3 So.2d 268 (1941); *In re Clover Ridge Planting and Manufacturing Co., Inc.*, 178 La. 302, 151 So. 212 (1933); *McMahon v. Manufacturers Casualty Insurance Co.*, 227 La. 777, 80 So.2d 405 (1955).[3]

■ The inclusion in State Farm's policy of both endorsements MLB–100 and MLB–101 demonstrates that the parties intended

MLB–101 to be the coverage afforded by the policy on the buildings, and MLB–100 to be the coverage for the contents. The language in MLB–100 which provides for application of the union or standard mortgage clause clearly states "Applicable to buildings only."

Although the rules of policy construction in Louisiana provide that any doubts concerning the meaning of an ambiguous provision in an insurance contract should be resolved against the insurer, courts absent such ambiguity have no right or authority under the guise of interpretation to alter the terms of the policy or make a new contract of insurance for the parties. *Monteleone v. American Employers Insurance Co.*, 239 La. 773, 120 So.2d 70, 72 (1960); *Green v. National Bellas Hess Life Insurance Co.*, 124 So.2d 397, 398 (La.App.3d Cir. 1960). Furthermore, every clause in a contract should be given effect if at all possible, and it is only when it is susceptible of two interpretations and in doubtful cases that they must be interpreted against the party who contracted the obligation. Articles 1951, 1955, 1957, La.Civ. Code. *Hemel v. State Farm Mutual Automobile Insurance Co.*, 211 La. 95, 29 So.2d 483 (1947).[4]

mortgagor's contract which, while it may be identical in language, may be breached by the mortgagor's act. In other words, the indemnity of the mortgagee is not at the whim of his debtor, and is subject only to breaches of which the mortgagee is, himself, guilty. It has been properly stated that in some instances, certain of the provisions of the fire policy are modified and, under certain conditions, even omitted by the new agreement which springs from the mortgage clause and the insurance policy.

This is the important distinction between the standard or union mortgage clause and the open loss payable clause in which the mortgagee could not recover where the insured was barred from recovery. In the open form, the indemnity of the mortgagee is subject to the risk of every act and neglect of the mortgagor which would avoid the original policy in the mortgagor's hands. The rights of the mortgagee in that type of contract are purely derivative, and if the mortgagor would have no right to recover, neither would the mortgagee. Under a standard mortgage clause, the liability of the insurer is prospective, and is to be determined by the rights of the mortgagee as of the time of loss. A clause providing that the loss should be payable to a mortgagee requires that

such party have a mortgage on the property, and where the mortgagee had no interest in the insured property not owned by the mortgagor, a standard mortgage clause attached to the policy has been held invalid. Nor would it generally be valid where there was no mortgage debt owed by the named insured at all. Furthermore the insurer cannot be considered to have assumed payment of the mortgage debt by issuance of a policy with such a clause attached."

3. To the same effect, although not a Louisiana case, *Paskow v. Calvert Fire Insurance Co.*, 579 F.2d 949 (5th Cir. 1978), *contra J. B. Kramer Grocery Co., Inc. v. Glenn Falls Ins. Co.*, 497 F.2d 709 (8th Cir. 1974) which is distinguishable because plaintiff sought to insure contents only and building coverage was not intended to be included.

4. The aforesaid collateral mortgage which Whitney relies upon to secure its indebtedness and which we must assume was either prepared by it and/or approved by its attorneys, with reference to insurance provides in pertinent part: "The policies of insurance to contain a clause that in the event of loss if any, payment

Applying these rules it is not even arguable that the clear and unambiguous terms of the standard or union mortgage clause of State Farm's policy in MLB–100 which states "Applicable to buildings only" should be held to also apply to contents. It would be tortured reasoning to hold otherwise for when the policy is read as a whole it is clear and consistent. The mortgagees as to buildings have the benefit of the standard or union mortgage clause and others do not.[5]

■ The claim of Foreign Car Parts, Inc. to recover from State Farm is barred by its arson and since Whitney is a conditional payee not entitled to protection of the standard mortgage or union clause, its claim is likewise barred.

Whitney also further argues that if it is not entitled to the protection of the mortgage clause of the policy it is entitled to recover under the general provisions of the policy, relying on *Investors Mortgage Co. v. Marine & Moore Insurance Co. of America,* 155 La. 627, 99 So. 486 (1923). However that case is distinguishable from the instant case in that Investors Mortgage Company was the owner of the insurance policy, paid the premiums, and the property owner had no interest whatsoever in the proceeds of the policy. This is inapposite to the facts in the instant case wherein the policy was procured and owned by Foreign Car Parts, Inc., and Whitney was neither the owner nor an assignee of the policy. Likewise, the case of *Commercial Security Co. v. Central Surety & Insurance Corp.,* 29 So.2d 712 (La.App.2d Cir. 1947) upon which plaintiff also seeks to rely, is distinguishable because that policy had been assigned to Commercial Security Company *prior* to the loss, and thus the acts of the assignor subsequent to the assignment could not bar the recovery of the assignee. Furthermore, the language of the endorsement in that case stated, "This automobile loss is now payable to ..." There is no such language in State Farm's policy. In that case the assignee, not the assignor, became the insured under the policy.

Thus, in summary, the Court concludes that Whitney only has an equitable lien on any proceeds which might become due to Foreign Car Parts, Inc.

> "Where the mortgagor has bound himself to insure for the benefit of the mortgagee, the mortgagee has a lien upon any money becoming due under the policy which is then held in trust for him and the insurer, having notice of his interest, cannot pay the money to the insured until the rights of all parties have been adjusted." Appleman, Insurance Law & Practice, § 2268, p. 208.

As the holder of an equitable lien on insurance proceeds payable to Foreign Car Parts, Inc., Whitney's recovery is solely contingent upon the insured's rights to recover. *Calvert Fire Insurance Co. v. Environs Development Corp.,* 601 F.2d 851 (5th Cir. 1979).

Accordingly, plaintiff is not entitled to any recovery herein and its suit is DISMISSED with prejudice, at plaintiff's cost.

shall be made to the mortgagee as his interest may appear." It does not provide that insurance policies shall contain the standard or union mortgage clause.

**5.** Whitney contends that since State Farm chose to use Form LPC–17 to limit the rights of CIT Financial Services to recovery of "any loss or damage ascertained or provision to be due assured under this policy ... as interest may appear," that this should be interpreted to render nugatory the language in MLB–100 that the New York standard or union mortgage clause applied only to buildings. This is a non-sequitur, and would require us to ignore the rules of construction as hereinabove set out. If any inference is to be drawn from the form of endorsements employed, the more rational one is that State Farm, absent a specific provision to the contrary, never intended the standard or union clause to apply when it wrote contents coverage.

## APPENDIX "A"

COINSURANCE CONTRACT

Form MLB-100
(Ed. 2-71)

### SMP GENERAL PROPERTY FORM
### SECTION I — PROPERTY COVERAGE

## I. PROPERTY COVERED

**COVERAGE A — BUILDING(S):** When the insurance under this policy covers buildings, such insurance shall also cover all additions and extensions attached thereto; all fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building; materials and supplies intended for use in construction, alteration or repair of the buildings; yard fixtures; personal property of the insured as landlord used for the maintenance or service of the described buildings, and including fire extinguishing apparatus, floor coverings, refrigerating, ventilating, cooking, dishwashing and laundering equipment, shades and outdoor furniture (but not including other personal property in apartments or rooms furnished by the insured as landlord); all while at the described locations.

**COVERAGE B — PERSONAL PROPERTY:** When the insurance under this policy covers personal property, such insurance shall cover only business personal property owned by the insured and usual to the occupancy of the insured, including bullion, manuscripts, furniture, fixtures, equipment and supplies, not otherwise covered under this policy, and shall also cover the insured's interest in personal property owned by others to the extent of the value of labor and materials expended thereon by the insured; all while in or on the described buildings, or in the open (including within vehicles) on the described premises or within 100 feet thereof.

This coverage shall also include Tenant's Improvements and Betterments, meaning the insured's use interest in fixtures, alterations, installations or additions comprising a part of the buildings occupied but not owned by the insured and made or acquired at the expense of the insured

exclusive of rent paid by the insured, but which are not legally subject to removal by the insured.

**PERSONAL PROPERTY OF OTHERS:** The insured may apply at each location up to 2%, but not exceeding $2,000, of the limit of liability specified for Coverage B — Personal Property at such location, as an additional amount of insurance, to cover for the account of the owners thereof (other than the named insured) direct loss by a peril insured against to personal property, similar to that covered by this policy, belonging to others while in the care, custody or control of the named insured and only while on the described premises or within 100 feet thereof.

Loss shall be adjusted with the named insured for the account of the owners of the property, except that the right to adjust any loss with the owners is reserved to the Company and the receipts of the owners in satisfaction thereof shall be in full satisfaction of any claim by the named insured for which payments have been made. As respects personal property belonging to others, this provision shall replace any loss payable provision of this policy.

The Coinsurance Clause of this form or the Value Reporting and Full Reporting Clauses of any other form made a part of this policy shall not apply to this coverage, and when applying said clauses to insurance covering property owned by the insured, the value of personal property of others shall not be considered in the determination of actual cash value.

When there is Contributing Insurance, the Company shall not be liable for more than its pro rata share of the limit applying to personal property of others.

**DEBRIS REMOVAL — COVERAGE A — BUILDING(S) OR COVERAGE B — PERSONAL PROPERTY:** This policy covers expense incurred in the removal of debris of the property covered hereunder which may be occasioned by loss by a peril insured against. The total amount recoverable under this policy shall not exceed the limit of liability stipulated for each item. Cost of removal of debris shall not be considered in the determination of actual cash value when applying the Coinsurance Clause.

## II. PROPERTY NOT COVERED

In addition to the kinds of property which are otherwise excluded or limited under this policy, the following are also excluded from coverage under this form:

A. Animals and pets; aircraft; watercraft, including motors, equipment and accessories (except rowboats and canoes, while out of water and on the described premises); and automobiles, trailers, semi-trailers or any self-propelled vehicles or machines, except motorized equipment not licensed for use on public thoroughfares and operated principally on the premises of the insured.

This exclusion does not apply to the following types of property when held for sale or sold but not delivered and specifically covered by endorsement:
1. Animals and pets.
2. Motorcycles and motor-scooters.
3. Trailers designed for use with private passenger vehicles for general utility purposes or carrying boats.
4. Watercraft, including motors, equipment and accessories, while not afloat.

B. Outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls not constituting a

part of building; walks, roadways and other paved surfaces; unless such items are specifically covered by endorsement.

C. The cost of excavations, grading or filling; foundations of buildings, machinery, boilers or engines which foundations are below the undersurface of the lowest basement floor, or where there is no basement, below the surface of the ground; pilings, piers, pipes, flues and drains which are underground; pilings which are below the low water mark.

D. Outdoor signs, whether or not attached to a building unless specifically covered by endorsement.

E. Household and personal effects contained in living quarters occupied by the insured, any officer, director, stockholder or partner of the insured or relatives of any of the foregoing, except as provided in the Extensions of Coverage or unless specifically covered by endorsement.

F. Growing crops and lawns.

G. Trees, shrubs and plants, except when held for sale or sold but not delivered, or to the extent provided in the Extensions of Coverage.

H. Property which is more specifically covered in whole or in part under this or any other contract of insurance.

## III. PERILS INSURED AGAINST

This policy insures under Section I against all direct loss to the property covered under this form caused by the following perils, except as otherwise specifically provided:

A. Fire.

B. Lightning.

C. Windstorm and Hail:
1. The Company shall not be liable as respects these perils for loss caused directly or indirectly by frost or cold weather or ice (other than hail), snow or sleet, whether driven by wind or not.
2. The Company shall not be liable as respects these perils for loss

to the interior of the buildings or the property covered therein caused
a. by rain, snow, sand or dust, whether driven by wind or not, unless the buildings covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct action of wind or hail and then shall be liable for loss to the interior of the buildings or the property covered therein as may be caused by rain, snow, sand or dust entering the buildings through openings in the roof or walls by direct action of wind or hail; or
b. by water from sprinkler equipment or other piping, unless

such equipment or piping ~~be~~ damaged as a direct result of wind or hail.

3. Unless specifically covered by endorsement, the Company shall not be liable as respects these perils for damage to the following property:

 a. grain, hay, straw or other crops outside of buildings;
 b. windmills, windpumps or their towers;
 c. crop silos or their contents;
 d. metal smokestacks or, when outside of buildings, awnings or canopies (fabric or slat) including their supports;
 e. outdoor radio or television antennas including their lead-in wiring, masts or towers;
 f. trees, shrubs and plants.

D. **Explosion:** Loss by explosion shall include direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom. The *Company shall not be liable for loss by explosion of steam boilers,* steam pipes, steam turbines or steam engines, if owned by, leased by or operated under the control of the insured. The following are not explosions within the intent or meaning of these provisions:

1. Shock waves caused by aircraft, generally known as "sonic boom".
2. Electric arcing.
3. Rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown.
4. Water hammer.
5. Rupture or bursting of water pipes.

6. Rupture o. ..rsting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water.
7. Rupture, bursting or operation of pressure relief devices.

E. **Sudden and Accidental Damage from Smoke,** other than smoke from agricultural smudging or industrial operations.

F. **Vehicles or Aircraft:** Loss by aircraft or by vehicles shall mean only direct loss resulting from actual physical contact of an aircraft, including self-propelled missiles or spacecraft, or a vehicle with the property covered hereunder or with the buildings containing the property covered hereunder, except that loss by aircraft includes direct loss by objects falling therefrom.

The Company shall not be liable as respects this peril for loss

1. by any vehicle owned or operated by the insured or by any occupant of the described premises; or
2. to any aircraft or vehicle, including contents thereof, other than stocks of aircraft or vehicles in process of manufacture or for sale.

G. **Riot, Riot Attending a Strike and Civil Commotion:** Loss by riot, riot attending a strike or civil commotion shall include direct loss by acts of striking employees of the owner or occupants of the described buildings while occupied by said striking employees and shall also include under this peril direct loss from pillage and looting occurring during and at the immediate place of a riot, riot attending a strike or civil commotion.

The Company shall not be liable as respects this peril for loss resulting from damage to or destruction of the described property owing to change in temperature or humidity or interruption of operations, whether or not such loss is covered by this policy as to other perils.

## IV. EXTENSIONS OF COVERAGE

The liability of the Company for loss in any one occurrence, including loss under these Extensions of Coverage, shall not exceed the limit of liability specified for the coverages being extended.

The total amount recoverable under the Extensions of Coverage in this form and Extensions of Coverage in any other form made a part of this policy are not cumulative and shall not exceed the largest amount recoverable under any single form made a part of this policy.

When there is Contributing Insurance, the Company shall not be liable for more than its pro rata share of the limits set forth in the following Extensions of Coverage.

A. **Newly Acquired Property:**

1. The insured may apply up to 10%, but not exceeding $25,000, of the limit of liability specified for Coverage A — Building(s) to cover direct loss in any one occurrence by a peril insured against to the following described property:

 a. New additions, new buildings and new structures when constructed on the described premises and intended for similar occupancy. This coverage shall cease 30 days from the date construction begins or on the date the values of new construction are reported to the Company, or on the expiration date of the policy, whichever occurs first.

 b. Buildings acquired by the insured at any location, elsewhere *than at the described premises, within the territorial limits of* this policy and used by him for similar occupancies or warehouse purposes. This coverage shall cease 30 days from the date of such acquisition or on the date values of the buildings are reported to the Company, or on the expiration date of the policy, whichever occurs first.

2. The insured may apply up to 10%, but not exceeding $10,000, of the limit of liability specified for Coverage B — Personal Property to cover direct loss in any one occurrence by a peril insured against to such property at any location (except fairs and exhibitions) acquired by the insured, elsewhere than at the described premises, within the territorial limits of this policy. This coverage shall cease 30 days from the date of such acquisition or on the date values at such locations are reported to the Company, or on the expiration date of the policy, whichever occurs first.

Additional premium shall be due and payable for values so reported from *the date construction begins or the property is acquired.*

B. **Off-Premises:** The insured may apply up to 2%, but not exceeding $5,000, of the sum of the limits of liability specified for Coverage A — Building(s) and Coverage B — Personal Property at a described location to cover direct loss in any one occurrence by a peril insured

against to such property (other than merchandise or stock) while removed from such location for purposes of cleaning, repairing, reconstruction or restoration. This Extension of Coverage shall not apply to property in transit, nor to property on any premises owned, leased, operated or controlled by the insured.

C. **Personal Effects:** The insured may apply up to $500 of the limit of liability specified for Coverage B — Personal Property to cover direct loss in any one occurrence. by a peril insured against to personal effects while located on the described premises, belonging to the insured, officers, partners or employees thereof, and limited to $100 on personal effects owned by any one individual. This Extension of Coverage does not apply if the loss is covered by any other insurance, whether collectible or not, or which would have been covered by such other insurance in the absence of this policy. At the option of the Company, loss under this Extension of Coverage may be adjusted with and payable to the insured.

D. **Valuable Papers and Records:** The insured may apply up to .$500 of the limit of liability specified for Coverage B — Personal Property to cover direct loss in any one occurrence by a peril insured against under Coverage B — Personal Property of this form to valuable papers and records consisting of books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other mag*netic recording or storage media for electronic data processing, and* other records, all the property of the insured at described locations. This Extension of Coverage covers only the cost of research and other expense necessarily incurred by the insured to reproduce, replace or restore such valuable papers and records. The total amount payable in any one occurrence under this Extension of Coverage shall not exceed the limit specified above, regardless of the number of described locations.

E. **Trees, Shrubs and Plants:** The insured may apply up to $1,000 of the sum of the limits of liability specified for Coverage A — Building(s)

and Coverage B — Personal Property to cover trees, shrubs and plants at the described location against direct loss in any one occurrence by the perils of fire, lightning, explosion, riot, civil commotion or aircraft, but only to the extent such perils are insured against herein. The Company shall not be liable for more than $250 on any one tree, shrub or plant, including expense incurred for removing debris thereof.

F. **Extra Expense:** The insured may apply up to $1,000 of the sum of the limits of liability specified for Coverage A — Building(s) and Coverage B — Personal Property to cover the necessary extra expense incurred by the insured in order to continue as nearly as practicable the normal operation of the insured's business immediately following damage by a peril insured against to the buildings or personal property situated at the described locations.

"Extra expense" means the excess of the total cost incurred during the period of restoration chargeable to the operation of the insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred. Any salvage value of property obtained for temporary use during the period of restoration, which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

"Period of restoration" means that period of time, commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild or replace such part of said buildings or personal property thereof as have been damaged.

The Company shall not be liable under this Extension of Coverage for:
1. loss of income.
2. the cost of repairing or replacing any of the described property,

or the cost of research or other expense necessary to replace or restore books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records that have been damaged by a peril insured against, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing the total amount of extra expense. In no event shall such excess cost exceed the amount by which the total extra expense otherwise payable under this Extension of Coverage is reduced.
3. any other consequential or remote loss.

G. **Replacement Cost:** In the event of loss to a building structure covered under this policy, when the full cost of repair or replacement is less than $1,000, the coverage of this policy is extended to cover the full cost of repair or replacement (without deduction for depreciation). Coverage shall be applicable only to a building structure covered hereunder, but excluding carpeting, cloth awnings, air-conditioners, domestic appliances and out-door equipment, all whether permanently attached to the building structure or not.

The Company shall not be liable under this Extension of Coverage:
1. unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and dispatch, and, in no event, unless repair or replacement is completed within a reasonable time after such loss.
2. unless the whole amount of insurance applicable to the building structure for which claim is made is equal to or in excess of the amount produced by multiplying the co-insurance percentage applicable (specified in this policy) by the actual cash value of such property at the time of the loss.

## V. EXCLUSIONS

This policy does not insure under this form against:

A. Loss occasioned directly or indirectly by:
1. enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures unless such liability is otherwise specifically assumed by endorsement;
2. electrical currents artificially generated unless loss by fire or explosion as insured against hereunder ensues, and then the Company shall be liable for only such ensuing loss.

B. Loss caused by or resulting from power, heating or cooling failure, unless such failure results from physical damage to power, heating or cooling equipment situated on premises where the property covered is located, caused by a peril insured against. The Company shall not be liable for any loss specifically excluded under the riot provisions of this form.

C. Loss caused by, resulting from, contributed to or aggravated by any of the following:
1. earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting;
2. flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;
3. water which backs up through sewers or drains;
4. water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors;

unless loss by fire or explosion as insured against hereunder ensues, and then the Company shall be liable for only such ensuing loss.

## VI. COINSURANCE CLAUSE

The Company shall not be liable for a greater proportion of any loss to the property covered hereunder than the limit of liability under this policy for such property bears to the amount produced by multiplying the coinsurance percentage applicable (specified in this policy) by the actual cash value of such property at the time of the loss.

In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the limit of liability for all contributing insurance applicable to the property involved at the time such loss occurs, no special inventory and appraisement of the undamaged property shall

be required, provided that nothing herein shall be construed to waive the application of the first paragraph of this clause.

If insurance under Section I of this policy is divided into separate limits of liability, the foregoing shall apply separately to the property covered under each such limit of liability.

The value of property covered under Extensions of Coverage, and the cost of the removal of debris, shall not be considered in the determination of actual cash value when applying the Coinsurance Clause.

## VII. DEDUCTIBLE CLAUSES

A. The following Deductible Clauses are applicable only if so stated in the Declarations:
1. **Loss Deductible Clause No. 1:** With respect to loss by windstorm or hail to buildings, structures or personal property in the open, the Company shall be liable only when such loss in each occurrence exceeds $50. When loss is between $50 and $500, the Company shall be liable for 111% of loss in excess of $50; and when loss is $500 or more, this deductible shall not apply.
2. **Loss Deductible Clause No. 2:** With respect to loss by any of the perils insured against other than:

a. fire or lightning,

b. windstorm or hail to buildings, structures or personal property in the open,

the Company shall be liable only when such loss in each occurrence exceeds $50. When loss is between $50 and $500, the Company shall be liable for 111% of loss in excess of $50; and when loss is $500 or more, this deductible shall not apply.

B. No more than one deductible shall apply to loss by windstorm or hail arising out of any one occurrence.

## VIII. VALUATION

Subject to the provisions and st tions of this policy, the following bases for valuation of property are established:

A. Tenant's Improvements and Betterments:
1. If repaired or replaced at the expense of the insured within a reasonable time after loss, the actual cash value of the damaged or destroyed improvements and betterments.
2. If not repaired or replaced within a reasonable time after loss, that proportion of the original cost at time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agreement, whether written or oral, in effect at the time of loss bears to the periods from the dates such improvements or betterments were made to the expiration date of the lease.

3. If repai( r replaced at the expense of others for the use of the insur.., chere shall be no liability hereunder.

B. Books of account, manuscripts, abstracts, drawings, card index systems and other records (except film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing) for not exceeding the cost of blank books, cards or other blank material.

C. Film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing for not exceeding the cost of such media in unexposed or blank form.

D. All other property at actual cash value.

## IX. CONDITIONS

A. **Permits and Use:** Except as otherwise provided herein, permission is hereby granted:
1. to make alterations and repairs;
2. for such unoccupancy as is usual or incidental to the described occupancy but vacancy is limited to the 60 day period permitted by the policy conditions;
3. in the event of loss hereunder, to make reasonable repairs, temporary or permanent, provided such repairs are confined solely to the protection of the property from further damage, and provided further that the insured shall keep an accurate record of such repair expenditures. The cost of any such repairs directly attributable to damage by any peril insured hereunder shall be included in determining the amount of loss hereunder. Nothing herein contained is intended to modify the policy requirements applicable in case loss occurs, and in particular the requirement that, in case loss occurs, the insured shall protect the property from further damage.

B. **Loss Clause:** Any loss hereunder shall not reduce the amount of this policy.

C. **Mortgage Clause:** Applicable to buildings only (this entire clause is void unless name of mortgagee (or trustee) is inserted in the Declarations): Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy: provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. Provided also, that the mortgagee (or trustee) shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and the Company shall have the right, on like notice, to cancel this agreement.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, the Company shall to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

# APPENDIX "B"

COINSURANCE CONTRACT SMP SPECIAL BUILDING FORM Form MLB-101 (Ed. 5-69)

## SECTION I — PROPERTY COVERAGE

With respect to SECTION I — PROPERTY COVERAGE, this form cancels and replaces any coverage on buildings provided under any other form made a part of the policy, but only with respect to those buildings to which this form is shown to be applicable.

## I. INSURING AGREEMENT

This policy insures against all risks of direct physical loss to Coverage A–Building(s), subject to the provisions and stipulations herein and in the policy of which this form is made a part.

## II. PROPERTY COVERED

COVERAGE A — BUILDING(S): When the insurance under this policy covers buildings, such insurance shall also cover all additions and extensions attached thereto; all fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building; materials and supplies intended for use in construction, alteration or repair of the buildings; yard fixtures; personal property of the insured as landlord used for the maintenance or service of the described buildings, and including fire extinguishing apparatus, floor coverings, refrigerating, ventilating, cooking, dishwashing, and laundering equipment, shades and outdoor furniture (but not including other personal property in apartments or rooms furnished by the insured as landlord); all while at the described locations.

DEBRIS REMOVAL: This policy covers expense incurred in the removal of debris of the property covered hereunder which may be occasioned by loss by a peril not otherwise excluded. The total amount recoverable under this policy shall not exceed the limit of liability stipulated for each item. Cost of removal of debris shall not be considered in the determination of actual cash value when applying the Coinsurance Clause.

## III. PROPERTY SUBJECT TO LIMITATIONS

The following property is subject to these additional limitations:

A. Plumbing, heating, air conditioning or other equipment or appliances (except fire protective systems) are not covered against loss caused by or resulting from freezing while the described buildings are vacant or unoccupied, unless the insured shall have exercised due diligence with respect to maintaining heat in the buildings or unless such equipment and appliances had been drained and the water supply shut off during such vacancy or unoccupancy.

B. Steam boilers, steam pipes, steam turbines or steam engines are not covered against loss caused by any condition or occurrence within such boilers, pipes, turbines or engines (except direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox, or combustion chamber, of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom).

C. Hot water boilers or other equipment for heating water are not covered against loss caused by any condition or occurrence within such boilers or equipment, other than an explosion.

D. Glass is not covered against loss for more than $50 per plate, pane, multiple plate, insulating unit, radiant heating panel, jalousie, louver or shutter, nor for more than $250 in any one occurrence, unless caused by fire, lightning, windstorm, hail, aircraft, vehicles, discharge from fire protection or building service equipment, explosion, riot or civil commotion, and then the Company shall be liable only to the extent that such perils are insured against in this policy.

E. Fences, pavements, outdoor swimming pools and related equipment, retaining walls, bulkheads, piers, wharves or docks, when covered under this policy, are not covered against loss caused by freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by wind or not.

F. Metal smokestacks and, when outside of buildings, cloth awnings, radio or television antennas including their lead-in wiring, masts or towers, are not covered against loss caused by ice, snow or sleet, nor by windstorm or hail unless liability therefor is specifically assumed by endorsement.

G. The interior of buildings is not covered against loss caused by rain, snow, sand or dust, whether driven by wind or not, unless (1) the buildings shall first sustain an actual damage to roof or walls by the direct action of wind or hail, and then the Company shall be liable for loss to the interior of the buildings as may be caused by rain, snow, sand or dust entering the buildings through openings in the roof or walls made by direct action of wind or hail; or (2) such loss results from fire, lightning, aircraft, vehicles, explosion, riot or civil commotion, vandalism or malicious mischief, to the extent that such perils are insured against in this policy.

H. Buildings or structures in process of construction, including materials and supplies therefor, when covered under this policy, are not covered against loss unless caused by fire, lightning, windstorm, hail, aircraft, vehicles, smoke, explosion, riot or civil commotion, vandalism or malicious mischief, and then the Company shall be liable only to the extent that such perils are insured against in this policy.

I. Property undergoing alterations, repairs, installations or servicing, including materials and supplies therefor, is not covered against loss if directly attributable to the operations or work being performed thereon, unless loss by a peril not excluded in this policy ensues, and then the Company shall be liable for only such ensuing loss.

## IV. PROPERTY NOT COVERED

In addition to the kinds of property which are otherwise excluded or limited under this policy, the following are also excluded from coverage under this form:

A. Outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls not constituting a part of a building; walks, roadways and other paved surfaces; unless such items are specifically covered by endorsement.

B. The cost of excavations, grading or filling; foundations of buildings, machinery, boilers or engines which foundations are below the undersurface of the lowest basement floor, or where there is no basement, below the surface of the ground; pilings, piers, pipes, flues and drains which are underground; pilings which are below the low water mark.

C. Outdoor signs, whether or not attached to a building, unless specifically covered by endorsement.

D. Growing crops and lawns.

E. Trees, shrubs and plants, except as provided in the Extensions of Coverage.

F. Property which is more specifically insured in whole or in part under this or any other contract of insurance.

## V. EXTENSIONS OF COVERAGE

The liability of the Company for loss in any one occurrence, including loss under these Extensions of Coverage, shall not exceed the limit of liability specified for the coverages being extended.

The total amount recoverable under the Extensions of Coverage in this form and Extensions of Coverage in any other form made a part of this policy are not cumulative and shall not exceed the largest amount recoverable under any single form made a part of this policy.

When there is Contributing Insurance, the Company shall not be liable for more than its pro rata share of the limits set forth in the following Extensions of Coverage.

A. **Newly Acquired Property:** The insured may apply up to 10%, but not exceeding $25,000, of the limit of liability specified for Coverage A—Building(s) to cover direct loss in any one occurrence by a peril not otherwise excluded to the following described property:

1. New additions, new buildings and new structures when constructed on the described premises and intended for similar occupancy. This coverage shall cease 30 days from the date construction begins or on the date the values of new construction are reported to the Company, or on the expiration date of the policy, whichever occurs first.

2. Buildings acquired by the insured at any location, elsewhere than at the described premises, within the territorial limits of this policy and used by him for similar occupancies or warehouse purposes. This coverage shall cease 30 days from the date of such acquisition or on the date values of the buildings are reported to the Company, or on the expiration date of the policy, whichever occurs first.

Additional premium shall be due and payable for values so reported from the date construction begins or the location is acquired.

B. **Off-Premises:** The insured may apply up to 2%, but not exceeding $5,000, of the limits of liability specified for Coverage A—Building(s) at a)described location to cover direct loss in any one occurrence by a peril not otherwise excluded to such building property while removed from such location for purposes of cleaning, repairing, reconstruction or restoration. This Extension of Coverage shall not apply to property in transit, nor to property on any premises owned, leased, operated or controlled by the insured.

C. **Trees, Shrubs and Plants:** The insured may apply up to $1,000 of the limit of liability specified for Coverage A—Building(s) to cover trees, shrubs and plants at the described location against direct loss in any one occurrence by the perils of fire, lightning, explosion, riot, civil commotion or aircraft, but only to the extent such perils are insured against herein. The Company shall not be liable for more than $250 on any one tree, shrub or plant, including expense incurred for removing debris thereof.

D. **Extra Expense:** The insured may apply up to $1,000 of the limit of liability specified for Coverage A—Building(s) to cover the necessary extra expense incurred by the insured in order to continue as nearly as practicable the normal operations of the insured's business immediately following damage by a peril not otherwise excluded under this form to the buildings or personal property situated at the described locations.

"Extra expense" means the excess of the total cost incurred during the period of restoration chargeable to the operation of the insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred. Any salvage value of property obtained for temporary use during the period of restoration, which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

"Period of restoration" means that period of time, commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild or replace such part of said buildings or personal property as have been damaged.

The Company shall not be liable under this Extension of Coverage for:

1. loss of income.

2. the cost of repairing or replacing any of the described property, or the cost or research or other expense necessary to replace or restore damaged books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records that have been damaged by a peril not otherwise excluded, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing the total amount of extra expense. In no event shall such excess cost exceed the amount by which the total extra expense otherwise payable under this Extension of Coverage is reduced.

3. any other consequential or remote loss.

E. **Replacement Cost Coverage:** In the event of loss to a building structure covered under this policy, when the full cost of repair or replacement is less than $1,000, this policy is extended to cover the full cost of repair or replacement (without deduction for depreciation). Coverage shall be applicable only to a building structure covered hereunder, but excluding carpeting, cloth awnings, air conditioners, domestic appliances and outdoor equipment, all whether permanently attached to the building structure or not.

The Company shall not be liable under this Extension of Coverage:

1. unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and dispatch, and, in no event, unless repair or replacement is completed within a reasonable time after such loss.

2. unless the whole amount of insurance applicable to the building structure for which claim is made is made is equal to or in excess of the amount produced by multiplying the coinsurance percentage applicable (specified in this policy) by the actual cash value of such property at the time of the loss.

## VI. EXCLUSIONS

**This policy does not insure under this form against:**

A. Loss occasioned directly or indirectly by:

1. enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures unless such liability is otherwise specifically assumed by endorsement;

2. electrical currents artificially generated unless loss by fire or explosion not otherwise excluded as insured against hereunder ensues, and then the Company shall be liable for only such ensuing loss.

B. Loss caused by or resulting from power, heating or cooling failure, unless such failure results from physical damage to power, heating or cooling equipment situated on premises where the property covered is located, caused by perils not otherwise excluded. Also, the Company shall not be liable under this clause for any loss resulting from riot, riot attending a strike, civil commotion, or vandalism and malicious mischief.

C. Loss caused by, resulting from, contributed to or aggravated by any of the following:

1. earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting;

2. flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

3. water which backs up through sewers or drains;

4. water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors;

unless loss by fire or explosion not otherwise excluded ensues, and then the Company shall be liable for only such ensuing loss.

**D. Loss caused by:**

1. wear and tear, deterioration, rust or corrosion, mould, wet or dry rot; inherent or latent defect; smog; smoke, vapor or gas from agricultural or industrial operations; mechanical breakdown, including rupture or bursting caused by centrifugal force; settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings; animals, birds, vermin, termites or other insects; unless loss by a peril not otherwise excluded ensues and then the Company shall be liable for only such ensuing loss.

2. explosion of steam boilers, steam pipes, steam turbines or steam engines (except direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox, or combustion chamber, of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom) if owned by, leased by or operated under the control of the insured, or for any ensuing loss except by fire or explosion not otherwise excluded, and then the Company shall be liable for only such ensuing loss.

3. vandalism, malicious mischief, theft or attempted theft, if the described building had been vacant or unoccupied beyond a period of 30 consecutive days

4. leakage or overflow from plumbing, heating, air conditioning or other equipment or appliances (except fire protective systems) caused by or resulting from freezing while the described building is vacant or unoccupied, unless the insured shall have exercised due diligence with respect to maintaining heat in the buildings or unless such equipment and appliances had been drained and the water supply shut off during such vacancy or unoccupancy.

5. theft (including but not limited to burglary and robbery) of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil commotion), unless loss by a peril not excluded in this policy ensues from theft or attempted theft, and then the Company shall be liable for only such ensuing loss.

6. unexplained or mysterious disappearance of any property, or shortage as disclosed on taking inventory, or caused by any wilful or dishonest act or omission of the insured or any associate, employee or agent of any insured.

## VII. COINSURANCE CLAUSE

The Company shall not be liable for a greater proportion of any loss to the property covered hereunder than the limit of liability under this policy for such property bears to the amount produced by multiplying the coinsurance percentage applicable (specified in this policy) by the actual cash value of such property at the time of the loss.

In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the limit of liability for all contributing insurance applicable to the property involved at the time such loss occurs, no special inventory and appraisement of the undamaged property shall be required, provided that nothing herein shall be construed to waive the application of the first paragraph of this clause.

If insurance under Section I of this policy is divided into separate limits of liability, the foregoing shall apply separately to the property covered under each such limit of liability.

The value of property covered under Extensions of Coverage, and the cost of the removal of debris, shall not be considered in the determination of actual cash value when applying the Coinsurance Clause.

## VIII. DEDUCTIBLE CLAUSES

**A. Loss Deductible Clause No. 1** — Applicable only if so stated in the Declarations: With respect to loss by windstorm or hail, the Company shall be liable only when such loss in each occurrence exceeds $50. When loss is between $50 and $500, the Company shall be liable for 111% of loss in excess of $50; and when loss is $500 or more, this loss deductible clause shall not apply.

**B. Special Loss Deductible Clause** — With respect to loss by any of the perils insured against under this form other than fire, lightning, aircraft, vehicles, smoke, explosion, riot or civil commotion, windstorm or hail, the Company shall be liable only when such loss in each occurrence exceeds $100. When loss is between $100 and $500, the Company shall be liable for 125% of loss in excess of $100; and when loss is $500 or more, this loss deductible clause shall not apply.

## IX. CONDITIONS

**A. Permits and Use:** Except as otherwise provided herein, permission is hereby granted:

1. to make alterations and repairs;
2. for such unoccupancy as is usual or incidental to the described occupancy but vacancy is limited to the 60 day period permitted by the policy conditions;
3. in the event of loss hereunder, to make reasonable repairs, temporary or permanent, provided such repairs are confined solely to the protection of the property from further damage, and provided further that the insured shall keep an accurate record of such repair expenditures. The cost of any such repairs directly attributable to damage by any peril not otherwise excluded shall be included in determining the amount of loss hereunder. Nothing herein contained is intended to modify the policy requirements applicable in case loss occurs, and in particular the requirement that, in case loss occurs, the insured shall protect the property from further damage.

**B. Loss Clause:** Any loss hereunder shall not reduce the amount of this policy.

**C. Mortgage Clause:** Applicable to buildings only (this entire clause is void unless name of mortgagee (or trustee) is inserted in the Declarations): Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy: provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. Provided also, that the mortgagee (or trustee) shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. The Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and the Company shall have the right, on like notice, to cancel this agreement.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, the Company shall to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

## APPENDIX "C"

[SEAL]

Form No. 17

### LOSS–PAYABLE CLAUSE

It is agreed that any loss or damage ascertained and proven to be due to the assured under this policy shall be held payable to C I T FINANCIAL SERVICES, 1645 VETERANS BLVD METAIRIE, LA 70005 as interest may appear; subject, however, to all terms and conditions of this policy.

Attached to and forming part of Policy No. 18 87 5027 of the STATE FARM FIRE & CASUALTY Ins. Co. of MONROE, LA ............., issued at its ...........................................Agency. Dated....................1–13 .19 77.