518 F.Supp. 359 (1981)
WHITNEY NATIONAL BANK OF NEW ORLEANS
v.
STATE FARM FIRE AND CASUALTY COMPANY.
Civ. A. No. 80-1903.
United States District Court, E. D. Louisiana.
July 21, 1981.
*360 John D. Wogan and Laura E. Junge of Monroe & Lemann, New Orleans, La., for plaintiff.
P. A. Bienvenu and Ernest L. O'Bannon of Bienvenu, Foster, Ryan & O'Bannon, New Orleans, La., for defendant.
CHARLES SCHWARTZ, Jr., District Judge.
This matter was tried to the Court, without a jury, on a former day, at which time the matter was taken under advisement pending receipt of post-trial briefs. Now, after due consideration of the evidence adduced at trial, the arguments of counsel, the briefs, and the law, the Court now makes the following findings of fact and conclusions of law.
To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

FINDINGS OF FACT
Plaintiff Whitney National Bank of New Orleans (Whitney) is a domiciliary of Louisiana and defendant State Farm Fire & Casualty Company (State Farm) is a foreign insurer, qualified to do and doing business in the State of Louisiana, with its principal place of business in a state other than Louisiana and the amount in controversy exceeds $10,000.00.
This Court has jurisdiction pursuant to 28 U.S.C. § 1332.
The facts are stipulated, and/or established by the exhibits received in evidence.
On May 27, 1979 a fire damaged or destroyed property of Foreign Car Parts, Inc., 4921 Airline Highway, Metairie, Louisiana. This fire was caused by arson instigated by Robert Bradford Smith and participated in by others, including Davis King, Jr. At the time of the fire Robert Bradford Smith was President, Registered Agent and General Manager and supervised all the operational activities of Foreign Car Parts, Inc. All of the common stock of Foreign Car Parts, Inc. was registered to the name of Marilyn Furman Smith at the time of the fire, and at that time Marilyn Furman Smith was the wife of Robert Bradford Smith.
The actual value of the contents, inventory and other chattels (or movable property) located at Foreign Car Parts, Inc. as of the *361 date and time of the fire was $264,565.00. After the fire the aforesaid property had a value of $35,000.00 and therefore the loss insofar as it pertains to contents amounted to $229,565.00.
Robert Bradford Smith on April 9, 1980 pleaded guilty to the arson which caused the loss.
On December 1, 1976 State Farm issued a Special Multi-Peril Policy covering liability and personal property of Foreign Car Parts, Inc. (the policy). The original policy in Item 7 of the declarations page thereof shows the following as mortgagee: "Security Homestead and Whitney National Bank, 222 Baronne Street." The endorsement effective on April 12, 1977 states as follows: "Security Homestead relates to the real estate and Whitney National Bank relates to contents, inventory and other chattels." Whitney is the mortgagee as to the movable property, that is the contents, inventory and other chattels of Foreign Car Parts, Inc. as holder of a collateral mortgage note in the sum of $1,000,000.00 executed in connection with an authentic act of collateral mortgage by Foreign Car Parts, Inc., executed March 3, 1977 before Steve J. Mortillaro, Notary Public. The mortgage indebtedness to Whitney far exceeds the fire loss and damage to the movable property, contents, inventory and other chattels of Foreign Car Parts, Inc. Attached to and forming part of the policy are endorsements MLB-100 entitled "SMP General Property Form," (Attached hereto as Appendix A) and MLB-101 entitled "SMP Special Building Form," (attached hereto as Appendix B). It is obvious that said endorsement MLB-101 cancels and replaces any coverage on buildings provided under any other form made a part of the policy.
State Farm also issued a separate "Loss Payable Clause" Form LPC 17 (attached hereto as Appendix C) to CIT Financial Service Corporation. Both Endorsements MLB-100 and MLB-101 at Section 9 entitled "Conditions" provide in pertinent part as follows:
"C. Mortgage Clause:

Applicable to buildings only (this entire clause is void unless name of mortgagee (or trustee) is inserted in the Declaration): Loss, if any, under this policy shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear under all present and future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of such mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property..."
The personal property insured by defendant under the policy was at the time of the fire owned by the insured.
Plaintiff duly notified defendant of its loss and damage and within the time specified in the policy caused to be served upon the defendant due and proper proofs of loss. However, defendant has failed and refused to pay plaintiff's loss and damage.

CONCLUSIONS OF LAW
The sole issue in this case is whether the arson of Foreign Car Parts, Inc. bars Whitney's claim as the holder of the aforesaid chattel mortgage on the contents of Foreign Car Parts, Inc.[1] In order to resolve the dispute it is necessary to determine whether Whitney is entitled to the protection of the "New York Standard" or "Union Mortgage Clauses"[2] of the policy or whether *362 Whitney is otherwise to be treated as a party entitled to unconditional recovery. Whitney in part argues that the rights set forth in Declaration "C" are applicable to chattel mortgages and/or contents as well as to buildings, and thus claims the benefit of the standard or union mortgage clause.
Louisiana law is in accord with the law in almost all jurisdictions to the effect that where there are loss payees in a policy of insurance pursuant to an open mortgage clause, i. e. without inclusion of a standard or union mortgage clause, their right to recover is contingent upon, and purely derivative of the right of the mortgagor to recover from the insurer. Officer v. American Eagle Fire Insurance Co., 175 La. 581, 143 So. 500 (1932); Eicher-Woodland Company, Inc. v. The Buffalo Insurance Company of New York, 198 La. 38, 3 So.2d 268 (1941); In re Clover Ridge Planting and Manufacturing Co., Inc., 178 La. 302, 151 So. 212 (1933); McMahon v. Manufacturers Casualty Insurance Co., 227 La. 777, 80 So.2d 405 (1955).[3]
The inclusion in State Farm's policy of both endorsements MLB-100 and MLB-101 demonstrates that the parties intended MLB-101 to be the coverage afforded by the policy on the buildings, and MLB-100 to be the coverage for the contents. The language in MLB-100 which provides for application of the union or standard mortgage clause clearly states "Applicable to buildings only."
Although the rules of policy construction in Louisiana provide that any doubts concerning the meaning of an ambiguous provision in an insurance contract should be resolved against the insurer, courts absent such ambiguity have no right or authority under the guise of interpretation to alter the terms of the policy or make a new contract of insurance for the parties. Monteleone v. American Employers Insurance Co., 239 La. 773, 120 So.2d 70, 72 (1960); Green v. National Bellas Hess Life Insurance Co., 124 So.2d 397, 398 (La.App.3d Cir. 1960). Furthermore, every clause in a contract should be given effect if at all possible, and it is only when it is susceptible of two interpretations and in doubtful cases that they must be interpreted against the party who contracted the obligation. Articles 1951, 1955, 1957, La.Civ. Code. Hemel v. State Farm Mutual Automobile Insurance Co., 211 La. 95, 29 So.2d 483 (1947).[4]
*363 Applying these rules it is not even arguable that the clear and unambiguous terms of the standard or union mortgage clause of State Farm's policy in MLB-100 which states "Applicable to buildings only" should be held to also apply to contents. It would be tortured reasoning to hold otherwise for when the policy is read as a whole it is clear and consistent. The mortgagees as to buildings have the benefit of the standard or union mortgage clause and others do not.[5]
The claim of Foreign Car Parts, Inc. to recover from State Farm is barred by its arson and since Whitney is a conditional payee not entitled to protection of the standard mortgage or union clause, its claim is likewise barred.
Whitney also further argues that if it is not entitled to the protection of the mortgage clause of the policy it is entitled to recover under the general provisions of the policy, relying on Investors Mortgage Co. v. Marine & Moore Insurance Co. of America, 155 La. 627, 99 So. 486 (1923). However that case is distinguishable from the instant case in that Investors Mortgage Company was the owner of the insurance policy, paid the premiums, and the property owner had no interest whatsoever in the proceeds of the policy. This is inapposite to the facts in the instant case wherein the policy was procured and owned by Foreign Car Parts, Inc., and Whitney was neither the owner nor an assignee of the policy. Likewise, the case of Commercial Security Co. v. Central Surety & Insurance Corp., 29 So.2d 712 (La.App.2d Cir. 1947) upon which plaintiff also seeks to rely, is distinguishable because that policy had been assigned to Commercial Security Company prior to the loss, and thus the acts of the assignor subsequent to the assignment could not bar the recovery of the assignee. Furthermore, the language of the endorsement in that case stated, "This automobile loss is now payable to ..." There is no such language in State Farm's policy. In that case the assignee, not the assignor, became the insured under the policy.
Thus, in summary, the Court concludes that Whitney only has an equitable lien on any proceeds which might become due to Foreign Car Parts, Inc.
"Where the mortgagor has bound himself to insure for the benefit of the mortgagee, the mortgagee has a lien upon any money becoming due under the policy which is then held in trust for him and the insurer, having notice of his interest, cannot pay the money to the insured until the rights of all parties have been adjusted." Appleman, Insurance Law & Practice, § 2268, p. 208.
As the holder of an equitable lien on insurance proceeds payable to Foreign Car Parts, Inc., Whitney's recovery is solely contingent upon the insured's rights to recover. Calvert Fire Insurance Co. v. Environs Development Corp., 601 F.2d 851 (5th Cir. 1979).
Accordingly, plaintiff is not entitled to any recovery herein and its suit is DISMISSED with prejudice, at plaintiff's cost.

*364 APPENDIX "A"

*365 
*366 
*367 

*368 APPENDIX "B"

*369 
*370 

*371 APPENDIX "C"

NOTES
[1] The parties have also stipulated that Smith's arson is imputable to Foreign Car Parts, Inc., and thus, that company is barred from recovery pursuant to the policy.
[2] The distinction between the rights of a mortgagee protected by the standard or union mortgage clause and the mortgagee under the open mortgage clause is set forth in Appleman, Insurance Law and Practice, § 3401 at p. 292-296.

"A distinction which is rather important to grasp is that the policy terms are themselves not nullified by a standard mortgage clause. It is rather, that a new contract containing those provisions is made with the mortgagee personally; and the mortgagee is not bound by the mortgagor's contract which, while it may be identical in language, may be breached by the mortgagor's act. In other words, the indemnity of the mortgagee is not at the whim of his debtor, and is subject only to breaches of which the mortgagee is, himself, guilty. It has been properly stated that in some instances, certain of the provisions of the fire policy are modified and, under certain conditions, even omitted by the new agreement which springs from the mortgage clause and the insurance policy.
This is the important distinction between the standard or union mortgage clause and the open loss payable clause in which the mortgagee could not recover where the insured was barred from recovery. In the open form, the indemnity of the mortgagee is subject to the risk of every act and neglect of the mortgagor which would avoid the original policy in the mortgagor's hands. The rights of the mortgagee in that type of contract are purely derivative, and if the mortgagor would have no right to recover, neither would the mortgagee. Under a standard mortgage clause, the liability of the insurer is prospective, and is to be determined by the rights of the mortgagee as of the time of loss. A clause providing that the loss should be payable to a mortgagee requires that such party have a mortgage on the property, and where the mortgagee had no interest in the insured property not owned by the mortgagor, a standard mortgage clause attached to the policy has been held invalid. Nor would it generally be valid where there was no mortgage debt owed by the named insured at all. Furthermore the insurer cannot be considered to have assumed payment of the mortgage debt by issuance of a policy with such a clause attached."
[3] To the same effect, although not a Louisiana case, Paskow v. Calvert Fire Insurance Co., 579 F.2d 949 (5th Cir. 1978), contra J. B. Kramer Grocery Co., Inc. v. Glenn Falls Ins. Co., 497 F.2d 709 (8th Cir. 1974) which is distinguishable because plaintiff sought to insure contents only and building coverage was not intended to be included.
[4] The aforesaid collateral mortgage which Whitney relies upon to secure its indebtedness and which we must assume was either prepared by it and/or approved by its attorneys, with reference to insurance provides in pertinent part: "The policies of insurance to contain a clause that in the event of loss if any, payment shall be made to the mortgagee as his interest may appear." It does not provide that insurance policies shall contain the standard or union mortgage clause.
[5] Whitney contends that since State Farm chose to use Form LPC-17 to limit the rights of CIT Financial Services to recovery of "any loss or damage ascertained or provision to be due assured under this policy ... as interest may appear," that this should be interpreted to render nugatory the language in MLB-100 that the New York standard or union mortgage clause applied only to buildings. This is a non-sequitur, and would require us to ignore the rules of construction as hereinabove set out. If any inference is to be drawn from the form of endorsements employed, the more rational one is that State Farm, absent a specific provision to the contrary, never intended the standard or union clause to apply when it wrote contents coverage.